# Kent, Admr., *v.* General Chemical Co., Appellant.

*Negligence — Injuries to farm — Discharge of chemicals—Evidence—Case for jury.*

1. In an action to recover damages to a farm alleged to have been caused by discharge of deleterious chemicals, where plaintiff eliminates the possibility of all other causes of the injury, and limits it to the cause charged, the case is for the jury.

*Negligence — Discharge of chemicals — Evidence — Experts — Opinions.*

2. In actions for injuries caused by the alleged discharge of deleterious chemicals from a manufacturing plant, while the testimony of experts is desirable, it is not necessary in all cases.

·3. Where the facts from which causal connection can be found have been testified to with sufficient clearness and definiteness that a layman in the ordinary affairs of life could infer the cause from the effect, expert evidence is not necessary. Ribblett v. Cambria Steel Co., 251 Pa. 253, distinguished.

4. Where defendant offers expert evidence which relates to the plant giving out fumes in normal operation, and plaintiff's evidence shows that the plant at times did not operate normally, the jury may make its own deductions, when considering the evidence of experts, with the facts testified to by plaintiff's witnesses.

*Negligence—Evidence—Credibility of witnesses—Case for jury.*

5. No matter how strong the oral evidence may appear to exculpate the alleged wrongdoer from liability, yet, since its weight depends upon the credibility of the witnesses, it must be submitted to the jury.

Argued October 6, 1925. Appeal, No. 128, March T., 1925, by defendant, from judgment of C. P. Allegheny

Co., July T., 1921, No. 555, on verdict for plaintiff, in case of Van N. Kent, Administrator d. b. n. c. t. a. of Hester R. Kent, deceased, v. General Chemical Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for injuries to farm from chemicals. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $5,950. Defendant appealed.

*Error assigned* was, inter alia, refusal of defendant's motion for judgment n. o. v., quoting record.

*John J. Heard,* with him *George E. Shaw,* of *Reed, Smith, Shaw & McClay,* for appellant.—Appellee failed to make out a case for the jury: Ribblett v. Steel Co., 251 Pa. 253; Burkhardt v. Steel & Wire Co., 74 Pa. Superior Ct. 437; Bruggeman v. York, 254 Pa. 430; Alexander v. Water Co., 201 Pa. 252; Fredericks v. Refining Co., 282 Pa. 8; Erbe v. P. R. T. Co., 256 Pa. 567; Kemmler v. R. R., 265 Pa. 212; Nelms v. R. R., 268 Pa. 292; Gundelsweiler v. Chem. Co., 161 Pa. 23.

*Albert C. Hirsch,* with him *J. Albert Reed, Ira D. Shaw* and *Watson & Freeman,* for appellee.—Expert testimony is not necessary: Burkhardt v. Steel & Wire Co., 74 Pa. Superior Ct. 437; Ribblett v. Steel Co., 251 Pa. 253.

Successful plaintiffs did not present any expert testimony in Pa. Lead Co.'s App., 96 Pa. 116, and Sullivan v. Steel Co., 208 Pa. 540.

Opinions must yield to facts: Hamilton v. Fay, 283 Pa. 175, 179.

OPINION BY MR. JUSTICE KEPHART, November 23, 1925:

This is an appeal from a judgment awarding damages in an action of trespass for injuries to a farm resulting

from a discharge of deleterious chemicals from defendant's plant into the atmosphere. The farm and plant are located on opposite sides of the Monongahela River, about half a mile apart, the former being on a high hill, approximately four hundred feet above the latter.

Appellant makes sulphuric acid; it also desulphurizes the residue of iron pyrites used in acid manufacture, making the iron available for blast furnaces. In the operation, fumes and smoke containing sulphuric acid in varying quantities are discharged. The stack for this purpose was enlarged in 1916 to a height of 250 feet. The damage to the farm was first noticed after the new stack was built. Chemical fumes were observed passing over the high land where appellee's farm is located. Prior to that time the farm was productive and the trees were in good condition.

It would be useless to make an extended review of the facts. This was the third trial, the record is voluminous, and the decision, as we view the case, is of interest to the parties only. It may be stated briefly that, after the time complained of, persons in the locality frequently saw fumes pass over the land, at times yellow, grey, then blue, coming from the plant. The odor and taste were distinct, the latter being like sulphur, and at times at night it became so strong as to necessitate the closing of doors and windows to enable the occupants of houses to sleep. The fumes caused sneezing and coughing, created a suffocating sensation, and made the eyes water. They varied in concentration, and were more noticeable in heavy foggy nights. Shortly after each passing of fumes the leaves on the trees turned yellow and brown; the grain and the garden produce became affected, finally many of the trees died. A white substance gathered on the galvanized wire fencing and the windows; formerly the fences lasted for years but after the presence of the fumes they had to be renewed annually. These recurrences were uniformly followed by the destruction of property and the effect was simul-

taneous to vegetation, garden truck, timber and orchard trees and fences.

Appellee eliminated the possibility of all other causes such as pests, scale, bores, fungi, blight, frost and fire. The damage was limited to one possible cause, except possibly certain spraying, the evidence of which was too meager and wholly lacking in conviction for us to lay hold of it as a matter of law; it was for the jury.

There was no expert testimony on behalf of the appellee giving an opinion of any relation between the fumes and the white substance on the iron fences, the death of the trees and vegetation, with the possible destruction of appellee's farm for farming purposes. We stated in Ribblett v. Cambria Steel Co., 251 Pa. 253, 257, that "It was the duty of the plaintiff to produce the evidence of an experienced chemist, who could give the court and jury the benefit of his special knowledge, by way of an expert opinion based upon the testimony in the case and upon such scientific investigations of the material at hand as he might be able to make," but we did not intend to imply that testimony from experienced chemists was necessary in all cases of this nature.

Where facts from which causal connection may be found have been testified to with sufficient clearness and definiteness that a layman in the ordinary affairs of life could infer the cause from the effect, expert evidence is not necessary. If the testimony of experts were to be required in every case, many meritorious ones would fail; it would place an undue burden on poor litigants. In the Ribblett Case that character of evidence was necessary because the basis on which the inference of liability was to be found was so weak that unless supported by scientific evidence there was nothing to submit to the jury. Here we have the positive evidence as to the farm being in normal condition, the fumes passing over the land, and the condition of vegetation, trees, and property immediately after; there was sufficient evidence from which the jury, from the com-

mon experience of men, could infer the causal relation to exist and that the damages came from defendant's plant: Pennsylvania Lead Co.'s App., 96 Pa. 116, 125; Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540. The case is very much stronger in this respect than the Ribblett Case, especially as all other causes were practically eliminated.

The court did not err in permitting the case to go to the jury. Whether or not there was sufficient sulphuric acid, $SO_3$ or of $SO_2$ or their combination, discharged from the plant through the stack to cause the damage was purely a question for the jury.

Appellee's case was opposed by evidence from experts of high standing. It eliminated the fumes as a possible cause of the destruction of appellee's property. The evidence, of course, was entitled to great weight, but there was no evidence showing actual operation or tests during the years 1916, 1917 or 1918. The opinion evidence concerned chiefly the plant in its normal operation. If deleterious chemicals coming from the plant at times spread over appellee's land to its damage, evidently the plant was not operating normally. The ores and raw materials do not exist in nature in absolute uniform consistency; this, with the uncertainty of the human element during operation, makes ordinary operation with anything like exactness to be of varying standards. Hence the overdischarge at times. The fact that the gas fumes in 1920 decreased shows that the operation was tending toward a state of perfection. The jury could make its own deduction when considering the evidence of the experts with the facts testified to by plaintiff's witnesses. Bliss v. Anaconda Copper Mining Co., 167 Fed. 342, 359; affirmed, 186 Fed. 789.

But, notwithstanding these observations, judgment n. o. v. could not be entered on the strength of defendant's oral testimony. There was sufficient evidence in appellee's case to go to the jury. The strength of appellant's oral evidence was for them. We said in Shaughnessy

**v.** Director General of Railroads, 274 Pa. 413, no matter how strong the oral evidence appeared exculpating the alleged wrongdoer from liability, since its weight depended upon the credibility of the witnesses it must be submitted to the jury. In this case the jury could, on comparison with the positive evidence in the case, have disregarded it or held it insufficient, but if there was any miscarriage it should be corrected by the trial court, who, if convinced of its certainty, should not hesitate to grant as many retrials as might be necessary to secure justice. We cannot say its discretion in this regard was abused. We are of one accord, the case was for the jury. It was a difficult case and the trial judge handled it with marked care. His charge to the jury was if anything more favorable to appellant. After a careful study we are satisfied the judgment should stand.

The assignments of error are overruled and the judgment is affirmed.