Ellis *v.* Jones & Laughlin Steel Co., Appellant.

Argued September 27, 1933.

Be-

fore KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William A. Challener*, and with him *Frank McC. Painter* and *William A. Challener, Jr.*, for appellant.

*Edwin B. Goldsmith*, for appellee.

OPINION BY CUNNINGHAM, J., December 16, 1933:

An operation at Johns Hopkins Hospital, Baltimore, on February 25, 1925, for the removal of a cancerous growth from the back of the head of J. P. Ellis, an employe of Jones and Laughlin Steel Company of Pittsburgh, resulted in his death. His widow, Ida B. Ellis, averring that her husband's death was attributable to an accidental injury, suffered in the course of his employment during the night of December 16, 1924, filed, in behalf of herself and their young son, a claim petition for compensation under our Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments. By reason of various proceedings before the compensation authorities and in the court below, the matter was not finally disposed of there until March 13, 1933, when a final judgment was entered upon an award in favor of the dependents and we now have this appeal by the employer from that judgment. The unusual and unwarranted

delay in disposing of this claim seems to have been due, largely, to repeated absences of the claimant and consequent lack of vigor in its prosecution. We advanced the argument upon this appeal to the beginning of the present term and are disposing of it as promptly as possible.

It is not disputed that when Ellis was admitted to Johns Hopkins Hospital he had an osteosarcoma of the skull in an advanced stage. As this record comes before us, our inquiry is whether it contains sufficient legally competent evidence to sustain the finding of the board that the injury of December 16, 1924; so "aggravated and accelerated the growth of the sarcoma from which [decedent] was then suffering as to be the predisposing cause of his death." Incidental questions of procedure are also raised and necessitate a somewhat detailed recital of this unusual and involved record.

In defendant's answer it was denied that the death of Ellis "was the result of an accident occurring in the course of his employment" and the matter first came on for hearing before a referee on September 18, 1925; the only testimony presented at this hearing was that of the claimant and Luke Ellis, a brother and fellow workman of decedent.

Material facts appearing from that evidence were that for approximately one year prior to the accident here involved, Ellis, twenty-six years of age, had a small (so-called) cyst about the size of a nickel near the center of the back of his head. Although scarcely noticeable to the eye, it could readily be located by the fingers; it had not increased appreciably in size over a period of months; nor did it affect his earning capacity.

About three o'clock on the morning of December 17, 1924, Ellis was assisting his brother in washing out the boiler of a "dinky" locomotive at one of defendant's plants. While he was standing in the cab and

endeavoring to pull out a plug, the wrench suddenly slipped off the head of the plug; he fell backward a distance of eight feet and struck the back of his head against the top of the cab of the engine. Although suffering pain, he worked intermittently until compelled to stop by reason of dizziness and at quitting time went to the emergency hospital at the plant; he returned from the hospital with his head bandaged and his brother took him home in their automobile; several days later he was taken to the South Side Hospital.

After various continuances, at the request of counsel for claimant, November 19, 1926, was fixed for a further hearing. Neither claimant nor her counsel appeared and counsel for defendant moved that the claim petition be dismissed for failure to prosecute it. The referee made findings of fact relative to the circumstances of the accident, substantially as above stated, but concluded "that the claimant had failed to show by competent evidence a direct and causal connection between the injury and the death of the deceased employe, through want of prosecution," and, accordingly, disallowed the claim.

Upon her appeal to the board, claimant averred she had been endeavoring, but unsuccessfully, to procure the attendance of the physicians who treated and operated upon her husband. The board ordered further hearings before it (in effect, hearings de novo) which were held June 1, 1927, and February 14, 1928, and at which the testimony of Dr. Charles H. Gano, defendant's physician at its plant, and Dr. H. E. McGuire, chief surgeon for defendant at the South Side Hospital, was taken on behalf of defendant, and that of Dr. Deryl Hart, assistant resident surgeon at Johns Hopkins Hospital, on behalf of claimant. They testified to these additional and uncontroverted facts.

When Dr. Gano saw Ellis a few hours after the accident he found a swelling "about the size of a small

hen's egg" on his head and put a tight bandage around it; the next day he made "a small puncture to see whether there was anything in it and got no results." The following day Ellis was sent to Dr. McGuire at the South Side Hospital where he remained until February 16, 1925, and then went to Baltimore, entering Johns Hopkins Hospital on February 23d.

An excerpt from the testimony of Dr. McGuire reads: "There was a swelling there about half the size of an egg, which had a small incision in it. The man gave me a history of having this lump a couple of years, and I thought probably it was a cyst which became larger. On cutting through the scalp I came right into brain tissue, with a terrific hemorrhage. I did not proceed any farther; I passed some deep sutures through the skull, closing the wound, which stopped the hemorrhage. Then we took x-rays which disclosed he had a tumor of the brain which ate its way through the skull on account of pressure. I told the family about operating on the man, and that I refused to do it because I thought the man would die."

The growth increased in size and was twice as large when Ellis left as it was when he entered the hospital. Dr. Hart testified, in substance, that when Ellis entered Johns Hopkins Hospital he was hardly able to walk and was suffering with inter-cranial pressure from osteosarcoma of the skull and was vomiting. As it was believed he could not survive more than a few days unless the sarcoma could be removed, an operation, having that object in view, was performed, but it was found that the ravages of the tumor were so extensive that a successful operation was impossible.

Dr. McGuire, in addition to testifying to the facts above noted, expressed the opinion that the sarcoma was not "due" to the injuries received while working on the locomotive. His cross-examination, however, on this matter reads: "Q. You say that the blow could not have had any effect on the sarcoma? A. I

did not say that. If he had this blow, it increased in size due to the condition of the tumor and the scalp. Q. But you are not in position to state to what extent the blow could increase it? A. No, I didn't see it before."

On March 28, 1928, the board affirmed the conclusion of the referee that there was no evidence of a causal connection between the accident and death, and affirmed the disallowance of compensation.

Upon appeal to the court below by claimant, ELDER W. MARSHALL, J., exercising the power conferred by the third paragraph of section 427, of the amendatory act of June 26, 1919, P. L. 642, 666, and in order to enable him to decide the question of law involved, i. e., whether the law had been properly applied to the facts of the case, remitted the record to the board for specific findings of fact "as to whether the injury . . . . . . caused or hastened" the death of Ellis. In his supporting opinion it was properly held that the testimony relative to the rapid growth immediately after the injury of the lump, which had previously caused neither pain nor inconvenience, demanded specific findings upon these questions. This order is not subject to the criticism made by us upon the order in Morell v. Buffalo & Susquehanna C. & C. Co., 103 Pa. Superior Ct. 316, 158 A. 192, cited by counsel for defendant.

The board returned the record in October, 1929, with findings; (a) that the sarcoma "was present before the trauma occurred," and (b) that the board was unable to decide "whether the sudden and subsequently persistent progress of the sarcoma was due to the injury or whether it was coincidental," because there was "no medical evidence that the blow aggravated the sarcoma and thus caused decedent's death."

When the board felt it could not make a finding upon the second question submitted to it by the court, it should have sought the advice of "impartial phy-

sicians or surgeons," as contemplated by sections 420 and 422 of the Act of 1919, supra, in order to "ascertain the facts," obtained their reports, and called them for examination and cross-examination: Seitzinger v. Fort Pitt Brewing Co., 294 Pa. 253, 144 A. 79; Jones v. United Iron and Metal Co., 99 Pa. Superior Ct. 394.

For some unexplained reason, counsel for claimant permitted the matter to lie dormant until February, 1932, although the court of its own motion ordered the case upon the argument list in 1930.

On February 16, 1932, Judge MARSHALL, referring to the failure of the board to make a finding upon the question of aggravation, again remitted the record with an order to make a specific finding relative to that matter within ninety days. In his second opinion, he stated that claimant had petitioned for leave to present the testimony of a medical expert; that such a petition was for the consideration of the board; and added he had no doubt the board would "receive such additional medical testimony as may be offered by either party."

Counsel for defendant excepted to this order, and when the board, as then constituted, granted claimant's petition for a further hearing, objected to the taking of any further testimony, upon the ground that the court was without power to make the order and the board was "without power, either under such order or under the law, to hold any further hearing in in this case," because the limitation prescribed in section 426 of the Act of 1919, as amended by the Act of April 13, 1927, 186, 196, prohibited the granting of a hearing such as was then sought, after more than one year had expired since the date (March 28, 1928) of the board's previous disallowance. The board overruled this objection and took the testimony of claimant's expert, Dr. L. H. Landon and that of Dr. Lester Hollander, called by defendant; at a subsequent hear-

ing the testimony of the operating surgeon, Dr. Walter Dandy, also called by defendant, was taken.

The question of the power and authority of the board to take and consider this additional medical testimony, constitutes one of the main contentions of the learned and experienced counsel for defendant. They insist that the only testimony upon which the compensation authorities could legally base findings in this case, and the only testimony which the courts may properly consider upon appeal, is the testimony taken prior to February 16, 1932, the date upon which the record was remitted for the second time. This question will be considered and disposed of later.

Upon the question of aggravation, Dr. Landon expressed his positive opinion (quoted below)* that the injury had aggravated the disease with which decedent was afflicted and accelerated his death.

*"My opinion is that the tumor existing in this man's head prior to his injury was a metastasis or secondary sarcomatous growth, apparently in its duration of relatively low malignancy; that the immediate swelling following the injury was due to hemorrhage, these growths being of extreme vascularity; that the first incision and the first operation failed to eradicate the tumor which then took on an accelerated growth with an aggravation of the symptoms, inciting, in the opinion of Dr. Dandy, an attempt at its removal which was done and in which the man died.

"I believe that there is a very definite connection between the rapidity of this growth and the injury which this man sustained to the growth and that this aggravation accelerated his death." .

On the other hand, Dr. Hollander, testifying for defendant, said the acceleration was, in his opinion, "not sufficient to make any practical difference," and Dr. Dandy, the operating surgeon, in addition to saying the sarcoma could not have been the result of the injury, expressed his belief that the accident had not hastened the death of the employe more than "a week or two."

The board filed an opinion and made nine findings of fact, the eighth of which reads: "We find from all the evidence that the blow to the back of decedent's

head on December 16, 1924, while in the course of his employment, caused a swelling of the preexisting sarcoma as the result of hemorrhage occasioned by the blow. We further find that the incision made into the sarcoma by Dr. Charles H. Gano on the same day aggravated the growth of this sarcoma, and that the operation of Dr. H. E. McGuire in cutting into the sarcoma, the scalp, and the brain tissue, although with reasonable cause, precipitated a terrific hemorrhage and greatly accelerated the growth of the sarcoma, and that the accidental injury and surgical interference were the instant and accelerating cause of the growth of the sarcoma as to be the predisposing and superinducing cause of the death of the decedent some two months and nine days following the accident.''

An award of compensation was then made in a total amount of $4,142.28. The board overruled defendant's exceptions to its findings and under date of May 11, 1932, returned the record to the court below. The exceptions were renewed and argued before the court in banc.

In an opinion by REID, J., filed July 7, 1932, the contention of counsel for defendant, that the board was without authority to receive and consider the testimony of Doctors Landon, Hollander and Dandy, was sustained, and the record again remitted with instructions to the board to dispose of the claim upon the testimony placed upon the record prior to February 16, 1932.

Thereupon the board, referring to the line of cases of which Kent v. General Chemical Co., 285 Pa. 34, 131 A. 588; Yodis v. Phila. and Reading C. & I. Co., 269 Pa. 586, 113 A. 73; Davis v. Davis, Director General, 80 Pa. Superior Ct. 343; and Bontempt v. Suburban Construction Co., 107 Pa. Superior Ct. 258, 163 A. 46, are examples, and considering only the evidence adduced prior to February 16, 1932, reached the con-

clusion that defendant was responsible for the effects of the treatment administered to Ellis by its doctors (Gano and McGuire), and that the nature of the events and symptoms rapidly following the accident justified an inference that the injury so aggravated the development of the sarcoma and accelerated the death as to justify an award. See Zionek v. Glen Alden Coal Co., 105 Pa. Superior Ct. 189, 160 A. 154, and Jones v. United Iron and Metal Co., supra.

Accordingly, the board, under date of August 4, 1932, made a finding to that effect, supported by an opinion written by its chairman, considered and dismissed defendant's exceptions thereto, and again returned the record to the court below. In an opinion by T. M. MARSHALL, J., under date of March 6, 1933, that tribunal upon a review of the testimony, exclusive of that taken subsequent to February 16, 1932, reached the conclusion that there was "ample evidence" to sustain the finding thus made and returned; defendant's exceptions were dismissed, the award reinstated, and judgment entered thereon under date of March 13, 1933.

Under the conclusions we have reached upon this appeal from that judgment, it is not necessary for us to consider the sufficiency of the evidence, exclusive of the testimony of Dr. Landon; we are of opinion that the court below erred in making the order of July 7, 1932, directing the board "to eliminate and entirely disregard," inter alia, the opinion expressed by him in his testimony at a hearing subsequent to February 16, 1932.

We think Dr. Landon's testimony was properly admitted by the compensation authorities. When it is considered, in connection with all the other evidence upon the record, the sufficiency of the evidence to sustain the award is beyond question. It was the exclusive function of the board to weigh the conflicting

opinions expressed by the medical experts and decide which opinion it would accept.

When we turn to the consideration of the proper construction of section 426, under the circumstances of this case, it must be kept in mind that the claimant's appeal from the disallowance by the board, under date of March 28, 1928, was pending in the common pleas from April 13, 1928, until its final disposition by that court on March 6, 1933: Driscoll v. McAlister Bros., Inc., 294 Pa. 169, 144 A. 89.

Section 426 was one of the new sections incorporated in the statute at the legislative session of 1919. The applicable portions of the section, as originally enacted, read: ''The board, upon petition of any party and upon cause shown, at any time before the court of common pleas of any county of this Commonwealth to whom an appeal has been taken under the provisions of section four hundred and twenty-seven of this article shall have taken final action thereon, may grant a rehearing of any petition upon which the board has made an award or disallowance of compensation or other order or ruling, or has sustained or reversed any action of a referee.'' Then follows a provision to the effect that when the board grants such a rehearing it shall file in the common pleas a certified copy of its order granting the same, whereupon it shall be the duty of the court to cause the record to be remitted to the board.

By the amendment of 1927, supra, the following limitation was added to the above quoted portion of the section; ''but such rehearing shall not be granted more than one year after the board has made such award, disallowance, or other order or ruling, or has sustained or reversed any action of the referee.''

When the section is read in connection with the other procedural provisions of the statute, we think it becomes quite apparent that the legislature intended

to make a distinction between a *rehearing* upon a petition which has been the basis of some prior action of the board and a *further hearing* for the purpose of enabling the board properly to comply with an order of court directing it to make more specific findings.

In the former instance, the claimant or defendant, as the case may be, becomes the actor and seeks to have the record returned to the board for the purpose of affording the petitioner an opportunity to prove additional facts which he deems essential to support his contention; but in the latter, neither of the parties sets the machinery in motion—the remitting of the record is the act of the court upon its own initiative. There are many good reasons why the limitation of one year, prescribed by the amendment, should be construed as applying to the former, and not to the latter, situation. Otherwise, the assertion of substantial rights of the parties would be made to depend upon whether the court in which an appeal is pending has acted upon it within a year after the date of the order appealed from. It is not difficult to conceive of many conditions—illness of a judge, congestion of business and the like—which would make it impossible for the court to act within the year.

In view of the repeated legislative and judicial expressions relative to the general purpose and intent of the statute and its amendments, we cannot conclude that the legislature meant to say, by the amendment now under consideration, that when the court in which an appeal is pending discovers that the findings then before it are not sufficient to enable it to decide the question of law raised by the appeal and remits the record for more specific findings, the board may not grant a further hearing and take the testimony necessary to enable it to make such findings, unless the record has been returned within one year from the date of its former order.

We are, therefore, of opinion that the board, upon

the return of the record by Judge MARSHALL on February 16, 1932, had authority and jurisdiction to take the testimony of the medical experts called before it by the parties—or, if it had deemed it necessary, might have appointed impartial experts and submitted them to direct and cross-examination—to the end that it might have a basis for findings of the character specified by the court.

This conclusion is in harmony with the practice adopted in Kocher v. Kocher, 300 Pa. 206, 150 A. 468, and Poellot v. B. & O. R. R., 109 Pa. Superior Ct. 471, 167 A. 497.

There is a close resemblance between the case at bar and the case of Whittle v. National Aniline and Chemical Co., 266 Pa. 356, 109 A. 847, and when the principles there laid down are applied here it becomes our duty to overrule all the assignments.

Judgment affirmed.