Greeby *v.* Philadelphia Asbestos Co.
(et al., Appellant).

Argued October 22, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Louis Wagner,* with him *Richard A. Smith* and *Thomas J. Clary,* for appellant.

*Thomas M. J. Regan,* for appellee.

OPINION BY BALDRIGE, J., November 20, 1935:

This workmen's compensation case was instituted more than four years ago. Numerous petitions and answers, hearings, and appeals followed. We will not review all, but it seems necessary to state some of the history of this long drawn-out case.

John S. Greeby, an employee of the defendant company, filed a claim petition with the Workmen's Compensation Board on March 27, 1931, wherein he alleged that he slipped while working for the defendant on a ship under construction, striking the upper part of his left arm. On September 14, 1931, before a hearing was had, he died. Subsequently, his widow, in behalf of herself and two minor children, filed another claim petition, which contains substantially the same averments as the original petition, except that it stated that sarcoma had developed from the accident, and caused her husband's death. The referee found that the averments in the petition were supported by competent evidence, and awarded compensation. On appeal, the board held that there was sufficient competent evidence to sustain the finding of an accident, but that the record contained convincing evidence that the decedent was suffering from initial stages of sarcoma of the left arm prior to the date of the alleged accident; that a recovery could only be had by a finding that the accidental injury accelerated a pre-existing sarcoma. The board concluded that further testimony should be taken with respect to the date of the accident and the physical condition of the deceased at or prior thereto, and accordingly remanded the record for a further hearing and determination.

At the second hearing on September 20, 1932, the claimant offered no additional testimony, stating that she would rely on the testimony at the previous hearing. The referee reaffirmed his previous order, and the insurance carrier again appealed. This was followed by a second opinion of the board, wherein it sustained the appeal and found that the claimant had suffered no accidental injury, thus reversing its former position, and "that his disability and death on September 14, 1931, were occasioned solely by natural causes, sarcoma (cancer) of a virulent type near the junction of the left arm and shoulder, accompanied by blood stream infection, which disease existed prior to March 27, 1931, and was neither caused nor aggravated by any accidental injury sustained by him while in the employ of the Philadelphia Asbestos Company; . . . . . . that the evidence offered by the claimant is not worthy of credence and belief." Thereupon, the claimant appealed.

When this appeal was pending, claimant filed a petition for a rehearing, alleging that she had located several witnesses whose testimony she desired to offer. The board granted the petition and vacated all its previous findings and conclusions. The case, after the defendant's appeal to the board's order was dismissed by the court, was assigned by the board to another referee, who took the testimony of the claimant and two other witnesses. The referee found "That the claimant [deceased] died from a sarcoma which sarcoma was either caused or aggravated by the accident which the claimant suffered while in the course of his employment for the defendant on March 27, 1931;" and awarded compensation. The insurance carrier then appealed to the board, which affirmed the referee in his findings and conclusions. The court below sustained the board's order, and this appeal followed.

The appellant urges us to hold that the board's final order was an abuse of discretion. This we refuse to do.

Section 426 of the Workmen's Compensation Act of June 2, 1915, as amended June 26, 1919, P. L. 642, and April 13, 1927, P. L. 186 (77 PS §871), expressly authorizes the board to grant a rehearing upon cause shown, provided the order is not made more than one year after the board has made an award, disallowance, etc. One of the purposes of the workmen's compensation laws is to give a claimant full opportunity to present whatever competent evidence he desires to reach the merits of the case. In harmony with this liberal tendency, the courts have held that the board has broad powers to grant a rehearing when justice requires: Kocher v. Kocher et al., 300 Pa. 206, 150 'A. 468; Manley v. Lycoming Motors Corp., 83 Pa. Superior Ct. 173; Fedak v. Dzialdowski, 101 Pa. Superior Ct. 346. In Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 A. 256, it is held that the court's duty does not extend to sending the record back for an opportunity to furnish cumulative evidence to strengthen a weak case, as the board's finding is binding on it; but it does not hold that so long as the record is within the grasp of the board it may not order a rehearing for further testimony to be taken.

The record in this case is not in as satisfactory shape as is desirable. The absence of explanation on the part of the board for changing its conclusions is subject to just criticism; for if we had the benefit of the reasons that moved the board to alter its former findings, some of the confusion present here would probably have been avoided. This is especially true, as practically all the medical testimony, which is a very important feature of this case, was taken prior to the board's first reversal of the referee, which included the statement of Dr. Pfeiffer, referred to later, that the accident aggravated the sarcoma. We do not doubt the right or propriety of the board, when justice requires, to change its mind upon further consideration of a case, but an expression

as to what prompted the change should be given. The fact remains, however, that the board, upon sufficient competent evidence, had the authority to adopt the final conclusion reached. It is said in Whittle v. Nat. Aniline & C. Co., 266 Pa. 356, 360, 109 A. 847: "It should be borne in mind that those charged with the responsi-bility of finding the facts in cases of this class are not required to be learned in the law, consequently we cannot look for the same precision in their adjudications that otherwise might be insisted upon: Flucker v. Carnegie Steel Co., 263 Pa. 113 [106 A. 192]."

There can be no serious dispute that the deceased was injured in the course of his employment on March 27, 1931. There was some conflict of testimony whether his arm gave him trouble prior to that time. Dr. Nock, who attended him after the injury, testified that he treated the deceased on two occasions about one month before the accident for pain in his upper left arm, which he described as rheumatic neuritis or periostitis. The claimant testified that the day after the accident she noticed her husband's left arm was swollen, and that he did not consult Dr. Nock until the 7th or 8th of April. This physician's testimony might have been persuasive to us if we were triers of the facts, but it was not conclusive on the referee or the board. A witness, named Fox, called at the last hearing, testified that he saw a lump on the deceased's left arm a couple of days after the accident. We might say, parenthetically, that it is fair to assume that his testimony had considerable bearing in changing the board's ultimate view of the case.

On April 13, 1931, the deceased went to the Lankenau Hospital dispensary, complained of distress in his upper left arm, and received treatments for five or six weeks. He was finally admitted to the hospital on the 20th of May, and was discharged, unimproved, June 3, 1931. He entered Dr. Rouse's hospital on June 9, 1931,

where he remained until he died. Dr. Rouse, who is a cancer specialist, testified that in his opinion the trauma, or blow, received by the deceased caused the sarcoma. Dr. Shoemaker, an X-ray specialist, called by the defendant, was asked: "Q. ...... would you or would you not say that that blow, notwithstanding he had arthritis or neuritis, would result in a traumatic condition bringing on the sarcoma? A. That would be compatible with my experience in former cases wherein a coincidental relationship existed between a previous trauma, or injury, and subsequent malignancy, or tumor." Dr. Pfeiffer, Surgeon-in-chief of the Lankenau Hospital, also called by the appellant, was asked: "Q. From your knowledge of this case and the knowledge that you have gotten from your own experience, the history and the testimony that you have heard today, is it your professional opinion that the blow in question here most probably did aggravate this sarcoma in particular? A. I'll say yes and then qualify it until you know how much I think it aggravated it. ......"

With this evidence before us, and bearing in mind that coincident with the happening of the accident there was a swelling which could be fairly attributed to the blow, the conclusion that death resulted from the accident was warranted: Ellis v. Jones & Laughlin, 111 Pa. Super. 252, 169 A. 263.

After a consideration of the entire record and arguments of counsel, we have concluded (1) that it was within the board's authority to vacate all previous orders, and return the case to the referee for a further hearing, and that all the evidence previously taken could be considered; and (2) that there was sufficient competent evidence to support the award.

Judgment is affirmed.