Harring *v.* Glen Alden Coal Company, Appellant.

Argued March 8, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Franklin B. Gelder,* with him *J. H. Oliver,* for appellant.

*Thomas C. Moore,* for appellee.

OPINION BY CUNNINGHAM, J., April 13, 1938:

The appeal in this workmen's compensation case is by the defendant coal company from a judgment entered by the court below upon an award by the referee and board to the widow of Joseph Harring (for herself and two of her children under the age of sixteen years) as compensation for the death of her husband on July 11, 1934, while in the employ of appellant.

The claim was presented and the award made under the provisions of Section 307 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as finally amended by the Act of April 26, 1929, P. L. 829, 77 PS § 561, upon the theory that, although the decedent had been afflicted for at least a month with chronic myocarditis, his physical condition was so aggravated by an "accident" suffered by him in the course of his employment on July 9, 1934, that his death two days later from a coronary thrombosis was materially hastened and therefore became compensable. See *Jones v. United Iron & Metal Co.*, 99 Pa. Superior Ct. 394; *Ellis v. Jones & Laughlin S. Co.*, 111 Pa. Superior Ct. 252, 169 A. 263; and *Whittle v. Nat. Aniline & C. Co.*, 266 Pa. 356, 109 A. 847.

The "chronic degenerative condition" of decedent's "cardiac muscle" had not interfered with the performance of the regular duties of his employment prior to the events out of which this case arose. Those duties consisted of cleaning out hopper railroad cars with a shovel and broom preparatory to having them loaded with coal at one of appellant's breakers.

The "injury," or "violence to the physical structure of [decedent's] body" averred by claimant was a blow upon his abdomen, accidentally received through slipping and falling upon the sloping side of one of the funnel-shaped hoppers in a car.

Appellant in its answer to the claim petition averred decedent's death "was not caused, aggravated, nor contributed to, by an accident in the course of his employment, but was the result of natural causes." Claimant, therefore, had the burden of showing with reasonable certainty that her husband during the course of his employment experienced some unexpected and untoward occurrence, aside from the usual course of events, which at least accelerated his death.

The question of law with which the court below was, and we are now, concerned, is whether the record contains competent evidence supporting the ultimate findings of the compensation authorities that the decedent met with an accident which so aggravated his chronic disease as to render his death premature.

These uncontroverted facts appear from the record. The empty cars were brought by an engine to a point some 400 feet from the loading pocket at the bottom of the breaker and, after having been cleaned by the decedent, were dropped down one at a time to the breaker by his fellow employee, Michael Kochan. They were of the "hopper" type and constructed of steel; each car had two V-shaped hoppers with trapdoors at the bottom, approximately 10 feet below the top of the car. In the performance of his duties, decedent was required to ascend a ladder on the corner of the car, get over the top, and go down the sloping sides of each hopper, removing any debris found therein. Nearby was a shanty at which decedent and Kochan left their buckets, etc.

Decedent was fifty-four years of age; on the morning of the alleged accident he left his home in his usual health and arrived at the breaker about seven o'clock. Within an hour after he started to work, and after he had cleaned two or three cars, Kochan saw him coming from the empty cars toward the shanty and had a conversation with him, hereinafter referred to. De-

cedent then left his place of employment, went to the office of appellant, made a report to the person in charge, and using his own automobile, in which he had driven to work, went to the office of Doctor W. J. Doyle, one of the company doctors, and also his family physician. From the doctor's office he drove to his home, complained "about his stomach hurting him" and was assisted to bed by claimant and his daughter. Later that day Doctor Doyle was called to the home and after treating decedent there until July 11th had him removed to the hospital where he died shortly after admission.

With this background we turn to a consideration of the testimony relied upon by claimant to sustain the conclusion that her husband met with an accident during the course of his employment. His fellow employee, Kochan, testified: "When I come over there Mr. Harring was already in the cars cleaning the cars out when I come there and I had a few cars down at the breaker waiting to be loaded and when the loader started loading them up and when they needed more cars I started walking toward the empty cars to bring them down, and when I walked up the track I saw Mr. Harring coming down. It being so early in the morning, and I said: 'What is the matter Joe?' and he said: 'I don't know, I slipped on the car and hurt myself.'"

In another portion of his testimony he quoted the decedent as having said, "Mike, I slipped there and fell and hurt myself in the car." This testimony was received by the referee over the objection of counsel for appellant that it was hearsay. Upon this point we agree with the conclusions stated in the excellent opinion written for the court below by McLEAN, P. J., to the effect that the testimony of Kochan, relative to the declarations made to him by decedent, was admissible as part of the res gestae.

The subject was fully considered by this court in the recent case of *Broad St. Trust Co. v. Heyl Bros. et al.,* 128 Pa. Superior Ct. 65, 193 A. 397, and the authorities were there classified and reviewed. We think the testimony now under consideration falls within the rule as stated in that case: "The test is whether [the declarations] were made under such circumstances as would raise the reasonable presumption that they were the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation and design." See also *Redrick v. Knapp Bros. Co. et al.,* 127 Pa. Superior Ct. 92, 193 A. 117.

Moreover, appellant called two of its employees, Peter Fry and Joseph Lipasky, to testify to a declaration made to them by the decedent as he was coming from the shanty and leaving his work to report the alleged accident. They testified the decedent said, "I am going home. I got a pain in the side and I am awful sick," but did not say anything about falling or slipping.

Robert Ermisch, appellant's outside foreman, when called by claimant, testified he had seen the report made by decedent of his injury and thus described it: "It just had he was sick, that he slipped in a car and twisted his side, hurt his side." This, of course, was not the best evidence of the contents of the report, but the paper was within the control of appellant and the fact that it was not produced warrants the inference that its production would not have aided appellant.

Another item of competent evidence upon this branch of the case was the following testimony of claimant. The incident in the car occurred on a Monday morning and Doctor Doyle treated decedent at the latter's home on Monday and Tuesday. An excerpt from claimant's

testimony reads: "Q. Do you recall calling [Doctor Doyle's] attention to any mark or abrasion? A. Yes sir, I did Tuesday morning. I said Doctor, look here. Yesterday it was just a small mark, the tip of the finger, and Tuesday the next day it was like the top of the milk bottle shaped, and he said it was, Mr. Harring told him, the buckle of the belt, and I told him Mr. Harring never wore a belt, he always wore suspenders. Q. Where was this mark? A. Right here on his stomach." There was testimony that on the Tuesday referred to decedent was suffering intense pain and vomiting constantly.

In rebuttal of claimant's testimony, Doctor Doyle stated: "A. I don't recall any such conversation, and I don't, I am sure I did not see any evidence, external evidence of injury. Q. You are sure there was none? A. Yes."

It should also be noted that both Doctor H. A. Smith, the attending physician at the hospital, and Doctor Doyle testified that decedent, in giving them the history of his injury, told them he "was getting into the car and his hand slipped off and he went in a little sooner or quicker than he expected to but landed on his feet and did not fall or strike anything."

The credibility of these witnesses, and the consequent weight to be given the testimony of each, was exclusively for the referee and board. All of the testimony to which we have referred showed that decedent met with some mishap outside of the usual incidents of his employment; its extent was purely a question of fact. The compensation authorities had the right, under the statute, to accept the testimony of Kochan and claimant as establishing that decedent, through slipping and falling in the car, received a blow upon his abdomen of sufficient severity to leave the mark described by

claimant. There was, therefore, competent evidence to support the finding that decedent met with an accident which caused violence to the physical structure of his body.

Our second inquiry is whether there is competent evidence upon the record to support the further 'finding of the referee, adopted by the board, "that the occurrence in the car accelerated the diseased condition of Harring and hastened his death."

The medical testimony favorable to appellant upon this point is accurately summarized in the following paragraph from the discussion of the referee: "Neither Doctor Smith nor Doctor Doyle believe that the jar or the shock or the slipping or the falling either aggravated Harring's condition or had any causal connection with the death of Harring but do believe that the development of the condition of coronary thrombosis may have caused Harring to lose his grip on the side of the car thereby allowing him to slip."

The opinions of these physicians were obviously based upon the history given each of them by the decedent, which, as noted, contained no reference to an injury to his abdomen. On the other hand, claimant called, at the second hearing, Doctor A. F. Colley. This witness, after stating he had read the testimony at the first hearing and had heard that given at the second, testified: "Q. What in your opinion Doctor caused the death of Joseph Harring? A. In my opinion, if this man received a blow upon the upper abdomen, the blow was directly causative or was a direct cause of his death, death occurring by coronary thrombosis. ...... Q. The record discloses that this decedent is a man approximately 54 years of age, a man of that age suffering from myocardial degeneration receiving a severe blow in his abdominal region, what if any effect would that blow

have on that man? A. I believe it would be fatal. The chain of events following would be somewhat complicated, but it would cause a fatality."

It is equally clear that Doctor Colley's opinion was predicated upon the assumption of a blow upon the abdomen. A question addressed to him on cross-examination and his answer read: "Q. And without the blow on the abdomen, if you take out of this case the possibility of the blow on the abdomen, then it is the typical death from natural causes, due to the corornary thrombosis, isn't it? A. That is true."

As we have already indicated, there was competent evidence from which the fact-finding tribunal could find that decedent had received a blow of the character assumed by the witness.

The presence upon this record of that testimony clearly distinguishes this case from *Carroll v. Willow Brook Co.,* 108 Pa. Superior Ct. 580, 165 A. 550, and the other similar cases cited and relied upon by appellant. Its presence also renders inappropriate the characterization of Doctor Colley's opinion as "guess-work and conjecture," based upon an "erroneous assumption."

Each professional opinion was a competent item of evidence. As they were conflicting it became the exclusive duty of the compensation authorities to determine which opinion they would accept in the light of the other competent evidence before them. Their adoption of the opinion of Doctor Colley is as binding upon us as it was upon the court below.

We think the compensation authorities were also justified in taking into consideration, as they did, the fact "that Harring's condition rapidly progressed toward death immediately after the accident."

Our examination of the entire record has satisfied us

that the findings of fact made by the referee, and adopted by the board, are supported by competent evidence, and that the law has been properly applied to the facts as found.

Judgment affirmed.