## Lieberman *v.* Sunray Drug Company, Appellant.

Argued September 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Samuel Kagle,* with him *Oscar Brown,* for appellant.

*John Francis Gough,* with him *Sheer, McDevitt & Mazzocone,* for appellee.

OPINION BY WATKINS, J., November 12, 1964:

This is an appeal from the judgment of the Court of Common Pleas No. 7 of Philadelphia County, entered in favor of Ida Lieberman, the widow of the deceased claimant, Louis Lieberman, the appellee, and against Sunray Drug Company, the employer appellant, in a workmen's compensation case.

The claimant decedent, aged 61 years, was a carpenter and prior to the accident had never lost a day in twenty-three years. He was severely injured while in the course of his employment on April 5, 1956. His injuries were the result of a fall while inspecting a ceiling and included a fractured dislocation of his left hip and injury to his chin, an injury to his right shoulder and a nerve injury involving his leg. On June 5, 1956 he was taken from the hospital to his home where he was provided with a hospital bed. His major difficulty was a form of paralysis from the nerve injury involving his broken hip on the left side. An agreement was entered into between employer and employee by which the decedent received compensation for total disability until February 4, 1957. For some time, because of confinement, he was becoming acutely depressed and on the advice of his orthopedic surgeon he returned to supervisory work while still on crutches

with the hope that such activity might prove a therapeutic benefit. He so worked until February 22, 1957 at which time he suffered a cerebral vascular accident for which he was again hospitalized and died on June 21, 1957.

The widow filed her claim petition and the referee awarded benefits. This award was appealed to the board and was vacated on the ground that the decedent's death was not related to the April 5th accident.

After the claimant had appealed to the court below, the board granted a rehearing and the case was remanded for this purpose. The action of the board on a petition for a rehearing, while an appeal is pending, is statutory and within the sound discretion of the board. The board, upon rehearing and without new evidence being presented before it, may change its mind as a result of reargument and come to a different conclusion, provided the order of rehearing is not made more than eighteen months after the decision of the board. We have held many times that the board has broad powers to grant a rehearing when justice requires it. *Greeby v. Phila. Asbestos Co.*, 120 Pa. Superior Ct. 9, 181 A. 452 (1935) ; *Conti v. Butler Consolidated Coal Co.*, 169 Pa. Superior Ct. 276, 82 A. 2d 528 (1951) ; *Gonzales v. O'Donnell's Broad Street Bar, Inc.*, 204 Pa. Superior Ct. 170, 203 A. 2d 583 (1964) ; *Thomas v. James J. Skelly, Inc.*, 204 Pa. Superior Ct. 166, 203 A. 2d 339 (1964). The defendant's contention that the board exceeded its authority in rehearing this matter is without merit.

The board's decision after rehearing was based on the following finding :

"We have carefully reviewed claimant's brief and defendant's reply brief of which we did not have the benefit heretofore.

"We are persuaded that although the claimant's accident of April 5, 1956, did not directly cause the vas-

cular complications on February 24, 1956, and his death on June 21, 1957, yet nevertheless, the evidence does substantiate the fact that the original accident on April 5, 1956, did hasten and accelerate the claimant's death. . . . The testimony of Dr. Digilio, Dr. Laskin and Dr. Friedenberg each supports this view."

This is a finding that the accident of April 5, 1956 contributed to the resulting cerebral vascular accident that caused death on June 21, 1957 or, in other words, that there was a causal relation between the accident and the death. The testimony of Dr. Digilio was unequivocal. He testified as follows:

"Now, in the first place, when you take an individual of sixty, let us say, and he had been accustomed to being around and doing physical work that Mr. Lieberman was doing which after all was that of a carpenter, since he fell off the scaffold I have a right to assume he climbed ladders and everything else that a carpenter does; so, he was a physically able individual and he did physical work.

"Now, when we take an individual who is accustomed to that type of work at his age and then put him into an enforced rest, several things happen. Namely; One, there is a change in the circulation. Certainly a layman can understand when exerting ourselves at a more rapid rate or the higher velocity is felt and as we rest, the circulation is lower or slower.

"Now, that is an important factor because we know that slowness of circulation is an important factor in the development of thromboses. That is the coagulation of the blood or development of clots within the blood vessels. As a matter of fact, that is exactly what happened in the cerebral vascular accident of the type that Mr. Lieberman had.

"Now, there is another thing which we have to consider: That certainly a man of his age had a certain amount of certain sclerosis and we must consider

that his arteriosclerosis he did in fact have was not sufficient to disable him, prior to the accident, from doing and engaging in the activity necessary in his work.

"So that he had, we must assume therefore, a normal amount of the arteriosclerosis but this arteriosclerosis does in fact cause a roughening of the surfaces of the blood vessels over which the blood must traverse, must travel; and when the blood is slow, must go over this uneven surface, there are two factors of involvement of thrombosis or clots within the blood vessels, and in this case, any cerebral vessels.

"Now, there is another factor which we must consider that is important. An individual of any age who is put at rest loses muscle tone. Now, there is an important difference in a man of sixty who loses muscle tone and one of twenty or thirty. The latter will get back his muscle tone much more readily, much more quickly and suffer less consequences. That is not so of an individual of the former year age or in the sixties. Here a loss of muscle tone is difficult to recapture but there are consequences in the recapturing of this muscle tone as follows: We do know that the athlete, who is well trained, uses his cardiovascular system in his athletics much less than an untrained individual. This means that the muscle tone is important; that the presence of adequate muscle tone is important in the lessening of the work of the cardiovascular even in normal activities.

"Now, with the man of sixty with loss of that muscle tone due to enforced rest, the layman or anyone can easily understand how important that cardiovascular system is in having to do the work or to do the few things this man can then do. That is, the physical effort.

"In addition to all this, the man was forced to use crutches. Walking with crutches is not normal walk-

ing.  Walking with crutches is not a support to the cardiovascular system as one would expect.  Quite the converse is true: That in the use of crutches, there is more work called on for the cardiovascular system. This is the whole cardiovascular to perform.

"So, for all these factors, it is my judgment that Mr. Lieberman suffered the fatal cerebral vascular disturbance at the time he did as a result of the accident which he sustained in April of 1956."  There is no question that the testimony of Dr. Digilio, the hospital medical report and in part, the testimony of Dr. Laskin and Dr. Zachary Friedenberg, support a finding of causal relationship.

In cases where the medical testimony is conflicting the credibility of the medical witnesses and the issues of fact created by this testimony are for the compensation authorities.  *Stites v. Rex Bar,* 202 Pa. Superior Ct. 587, 198 A. 2d 615 (1964).  It is our duty to consider the evidence in the light most favorable to the party prevailing before the board and all reasonable inferences must be drawn in support of the board's decision.  Also it is for the referee and the board to determine the weight of the testimony.  *Birosak v. Shawnee Inn,* 198 Pa. Superior Ct. 652, 184 A. 2d 120 (1962).

The decedent was a carpenter and never lost a day of work in twenty-three years until the accident.  There is no evidence that he had any complaints prior to the accident that in any way curtailed his regular employment.  He fell eighteen feet while climbing to inspect a ceiling condition.  The hospital notes do show that he did have arterial changes, "moderate coronary disease".  The hospital notes also show that at the time of his admission "heart is regular, no murmurs.  No failure".  After surgery on April 12, the hospital record notes, "general condition good.  Heart rate and rhythm regular".  This does not mean that there was

not a "certain amount of arteriosclerosis" as testified by Dr. Digilio, when the admitted cause of death was a "cerebral vascular accident". This man was hopping around on crutches after a long period of inactivity, with a nerve palsy which resulted in excessive brain change, which, in the opinion of claimant's medical expert, caused the onset of death by affecting the blood vessels of the brain. Where injuries are suffered due to an accident, the fact that he had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, does not defeat his right to compensation. *Fehr v. Y.M.C.A.*, 201 Pa. Superior Ct. 107, 192 A. 2d 143 (1963).

In *Parks v. Winkler*, 199 Pa. Superior Ct. 224, 184 A. 2d 124 (1962), the claimant developed a complication because he was "immobilized" by his accidental injury. The accident occurred on October 31, 1957 when he was struck by a truck and sustained a back injury. He died on April 19, 1959 as a result of a pulmonary infarction due to phlebothrombosis. This Court held that the medical testimony established a causal connection between the accident and the death. In *Stites v. Rex Bar,* supra, the claimant had a finger laceration which became infected. The accident occurred on February 24, 1953. On March 11, 1953 he was admitted to the hospital and was operated on March 31, 1953. He died April 3, 1953. The sole issue in that case was whether the board's finding in favor of the claimant was based on competent medical evidence that the accident suffered by the decedent was causally connected with his death which occurred on the thirty-eighth day after his fingers were lacerated. This issue was decided by this Court in favor of the claimant. In the instant case the surgery that was necessary as a result of the accident took place on April 12, 1956, while his death occurred on June 21,

1957. See also: Collection of cases in Vol. 21, Pittsburgh Law Review 445, 458, note 11.

Judgment affirmed.