Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Sidonia Sax, Widow of Rabbi Jacob Sax, Deceased *v.* Western Packers, Inc. and American Mutual Liability Insurance Carrier, Appellants.

Argued October 31, 1975, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*John David Rhodes,* with him *Thomson, Rhodes & Grigsby,* for appellants.

*Dennis S. Shilobod,* with him *Messer & Shilobod,* for appellee, Sax.

*James N. Diefenderfer,* for appellee, Workmen's Compensation Appeal Board.

OPINION BY JUDGE CRUMLISH, JR., January 12, 1976:

Rabbi Jacob Sax, a professional religious slaughterer, was injured at his place of employment, Western Packers, Inc. (Appellant) on February 14, 1972, when kicked by a steer causing the fracture of the right fourth, fifth and sixth ribs. The parties entered into a compensation agreement whereby Rabbi Sax received $60.00 per week, there being no further claim for lifetime compensation.

Following the accident of February 14, Rabbi Sax underwent medical and hospital care at two different hospitals until he died three months later. The Rabbi's widow, Sidonia Sax (Claimant), then filed her fatal claim petition. Following the hearing, the referee entered twenty findings of fact in support of his fatal claim award. After Appellants' appeal to the Workmen's Compensation Appeal Board (Board), the matter was remanded to the referee for further findings of fact relative to the accident and the cause of the subsequent death. This remand was necessitated in that the underlying theory of recovery, upon which the referee granted compensation, was that the kick reactivated a quiescent gastric ulcer which resulted in its bleeding and in debilitating the Rabbi's condition, although the immediate cause of death was found to be carcinomatosis resulting from bronchiogenic carcinoma. This dibilitation also followed bone surgery which confirmed the existence of a sixth rib lesion. The following are the additional findings of fact entered in compliance with the remand:

TWENTY-FIRST: The fractured ribs did not cause the decedent's cancer.

TWENTY-SECOND: The decedent had an incipient and/or latent cancer prior to the work related injury.

TWENTY-THIRD: The decedent had a gastric ulcer prior to the work related injury.

TWENTY-FOURTH: The gastric ulcer was benign and quiescent prior to the work related injury.

TWENTY-FIFTH: The injury, the stress resulting therefrom, the hospitalization, the treatment, and the medication resulted in the re-occurrence of bleeding from the ulcer.

TWENTY-SIXTH: The gastric ulcer was aggravated and activated by the trauma of the injury and its results.

TWENTY-SEVENTH: The said bleeding was massive and required replacement of blood at the hospital, which was furnished.

TWENTY-EIGHTH: The decedent's hematocrit upon admission to the McKeesport Hospital on February 17, 1972 was 44; at discharge on March 15, 1972, the hematocrit was 35, and "this was after many units of blood had been given."

TWENTY-NINTH: The Discharge Summary of McKeesport Hospital shows that at his admission of April 28, 1972, the hematocrit was 32 and was also 32 at the last performed hematocrit before death.

THIRTIETH: The primary cause of death on the death certificate was carcinomatosis due to bronchiogenic carcinoma.

THIRTY-FIRST: The final diagnosis on the Discharge Summary, McKeesport Hospital, at the time of death, May 13, 1972, shows final diagnosis as:

1. Carcinomatosis
2. Bronchiogenic Carcinoma
3. Fracture right ribs, 4,5,6.
4. Compression fracture
5. Gastric unlcer—benign
6. Pituitary adenoma

On the same sheet are shown under Complications, the following:

Anemia

Septicemia

THIRTY-SECOND: The initial x-rays following the work related injury did not reveal any malignancy.

THIRTY-THIRD: On March 11, 1972 x-rays showed that the right sixth rib was destroyed posteriorly about 9 cm. from the spine by an osteolytic lesion.

THIRTY-FOURTH: On March 14, 1972 a bone survey was performed, the osteolytic lesion of the right sixth rib was confirmed, and there was no other mestastatic lesion at the time.

THIRTY-FIFTH: The decedent was more susceptible to the ravages of his cancer because of a negative nitrogen balanced state (starvation) resulting from the massive bleeding and general state of malnutrition which were consequences of the work related injury.

THIRTY-SIXTH: The patient's anemia was a direct result of the events triggered by the rib fractures.

THIRTY-SEVENTH: Although the cancer was both peripheral and limited to the sixth rib when first discovered, the decedent was not a proper candidate for optimum treatment, namely surgery, because of his debilitated condition.

THIRTY-EIGHTH: The fracture of the ribs with its consequences, including the bleeding of the ulcer, massive transfusions, and the necessary treatment accelerated the death of the decedent.

THIRTY-NINTH: The work related injury, that is, the fracture of the three ribs on February 14, 1972 substantially and significantly contributed to the death of Rabbi Jacob Sax on May 13, 1972.

FORTIETH: The work related injury of February 14, 1972 caused the death of the decedent within the purview of the Workmen's Compensation Act.

With this supplemental record, the Board again sustained the grant of compensation sought in the widow's fatal claim petition. The Board agreed that the injury to Rabbi Sax, the stress resulting from the injury and the treatment and medication received, resulted in the aggravation of the previously quiescent ulcer, and that he had become more susceptible to the ravages of the cancer because of the bleeding and consequent malnutrition. In addition, the Board affirmed the referee's determination that the Rabbi's weakened physical state was a prime factor in rejecting surgical removal of the cancer.

Appellant raises three arguments in support of its position:

1. Were the Board's findings supported by substantial and competent evidence, or in the alternative, was there a capricious disregard of competent evidence in that the Rabbi would have died of the cancer independent of the accident and, that it was impossible to determine cause or acceleration due to the accident?

2. Did the Board err in attributing the death to debility or lower resistance absent findings that the accident caused or aggravated the cause of death, carcinomatosis of the bronchus?

3. Did the Board err as a matter of law in attaching significance to the physical appearance and work habits of decedent prior to the subject accident?

Addressing Appellant's initial argument, we reiterate our scope of review in workmen's compensation appeals. As we recently said in *Workmen's Compensation Appeal Board v. Young*, 18 Pa. Commonwealth Ct. 515, 517, 336 A.2d 665, 666 (1975), "[i]f the party who has the burden of proof prevailed in the administrative process, review by this Court is to determine whether constitutional rights were violated, an error of law committed or to make certain that necessary findings of fact are supported by substantial evidence, . . . but if the decision is against the party carrying the burden of proof, our review is limited

to a determination of whether the findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence."

Claimant, as proponent of the fatal claim petition, had the burden of proof and she successfully shouldered that burden. Our review, therefore, is limited to the question of substantial evidence and not to the capricious disregard of competent evidence.

An exhaustive review of the record obliges us to conclude that substantial evidence does exist to support the referee's findings of fact which were adopted by the Board. Capsulizing his testimony, Claimant's medical expert, Dr. Cohen, testified that the Rabbi was in a debilitated state as a result of the fractured ribs and consequent bleeding ulcer thus making decedent more susceptible to the cancer. Further, he stated that decedent would not have died on May 13, 1972 had he been in an otherwise healthy state, adding that the debilitated state of his health accelerated the death. And finally, he said that the optimal treatment for the cancer was surgery, but, because of the Rabbi's weakened physical state, surgery was rejected. Also of record is the opinion of Appellant's medical expert, Dr. Brown, that the trauma and the hospitalization associated therewith *could have* caused the ulcer to bleed. Dr. Brown concurred in Dr. Cohen's observation that surgery was not advisable due to the weakened physical state of the patient.

Appellant points us to testimony which controverts that just recited, and which has as its basic thrust the proposition that the blow sustained by the Rabbi was not the direct cause of the death. This may be so, but if the Claimant's evidence is substantial in support of the findings of the referee, the contradiction is meaningless at this stage of the proceedings. Obviously, the referee found the evidence relied upon more credible than the refutation, and it is, as we have so often said, not for us to override

such a determination. *See Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

Appellant next argues the question of law of cause and aggravation of an existing condition, both of which concepts have early and extensive precedential history. In *Whittle v. National Aniline & Chemical Company*, 266 Pa. 356, 109 A. 847 (1920), a claimant was given an award following the explosion of a still in the employer's plant causing a bruising of the left side of decedent's face and a lingering pain in that area. Diagnosis following the accident revealed a cancer (carcinoma) located in the same area as the bruise caused by the explosion. An operation for removal of the carcinoma provided temporary relief but death, due to carcinoma, ensued some six months after the accident. On the basis of testimony supporting this, the Court awarded claimant compensation on the theory that there had been a tumor on his face, which the injury changed to carcinoma. Thus, *Whittle* makes it clear that aggravation of a pre-existing condition could serve as a basis for compensation.

Later, the Superior Court in *Ellis v. Jones and Laughlin Steel Company*, 111 Pa. Superior Ct. 252, 169 A. 263 (1933), held that where a claim for compensation was based on the effect of intervening treatment by physicians following an accident on the employer's premises, "the nature of the events and symptoms rapidly following the accident justified an inference that the injury so aggravated the development of the sarcoma and *accelerated* the death as to justify an award."[1] *Ellis, supra*, 111 Pa. Superior Ct. at 261, 169 A. at 267. (Emphasis added.)

---

1. For further examples of this line of cases, *see Kent v. General Chemical Co.*, 285 Pa. 34, 131 A. 588 (1925) ; *Yodis v. Philadelphia and Reading C. & I. Co.*, 269 Pa. 586, 113 A. 73 (1921); *Bontempt v. Suburban Construction Co.*, 107 Pa. Superior Ct. 258, 163 A. 46 (1932) ; *Zionek v. Glen Alden Coal Co.*, 105 Pa. Superior Ct. 189, 160 A. 154 (1932) ; and *Jones v. United Iron and Metal Co.*, 99 Pa. Superior Ct. 394 (1930).

Next came *Euker v. Welsbach Street Lighting Company of America*, 149 Pa. Superior Ct. 78, 25 A.2d 758 (1942), where a diabetic employee sustained a splinter in an on the job accident. Infection followed which resulted in anemia, and a breakdown of the heart and kidneys. In awarding compensation, that Court said:

> "The burden rested upon this claimant to prove by unequivocal medical testimony that the accident materially aggravated the existing disease of her husband to such an extent that the aggravation became the independent cause of death. By that it is not meant that the accident was the sole or exclusive cause. *In other words, the claimant was required to show that the accident materially contributed to the death, rather than that the death resulted from the natural progress and development of any disease with which the deceased may have been afflicted for which the employer is not liable;* Bittner v. Saltlick Township, 109 Pa. Superior Ct. 406, 411, 167 A. 483; Byars v. Howard Cleaners, Inc., et al., 140 Pa. Superior Ct. 188, 190, 13 A.2d 883." *Euker, supra,* 149 Pa. Superior Ct. at 83, 25 A.2d at 760. (Emphasis added.)

and the Court continued by citing with approval the following language from *Lafferty v. Carbo-Oxygen Company,* 122 Pa. Superior Ct. 425, 185 A. 883 (1936).

> "We cannot understand the testimony of the physicians as meaning anything else than that the existing physical condition of the deceased was aggravated and his death accelerated by the injury received in his employment. Such being the case the claimant is entitled to recover compensation. The fact that the deceased had a chronic ailment which made him more susceptible to an injury than an ordinary person will not defeat his right to compensation. *On the contrary, if the pre-existing ailment was aggravated and his death accelerated by the injury, then under the law he was entitled to compensation.* (citing cases). See also

Flowers v. Canuso & Son, et al., 115 Pa. Superior Ct. 234, 175 A. 287.

"So here we have a pre-existing ailment which very definitely was aggravated by the injury and as a result his death was accelerated." *Euker, supra,* 149 Pa. Superior Ct. at 84-5, 25 A.2d 760-61. (Emphasis added.)

In closely reviewing the record, we are satisfied that Claimant has established that the accident materially contributed to the death rather than the death being the result of the natural progression of the cancer, and that the aggravation imposed, incident to the accident was the cause of the acceleration of death.

Finally, Appellant argues reversible error because the Board attached significance to decedent's physical appearance and work habits prior to the accident. The Board found: "[i]t is significant, however, that the physician of claimant, testified that the rabbi was working regularly at work, before the accident, and was an active, strong man 'only fifty-nine years of age.'" This was merely a gratuitous comment made in passing while reviewing the effect of *Whittle, Ellis* and *Euker, supra.*

So long as the issue before the administrative body is of aggravation or deterioration, health, appearance and work habits prior to injury are relevant.

Consistent with the foregoing, we

## ORDER

AND NOW, this 12th day of January, 1976, Sidonia Sax, widow of Rabbi Jacob Sax, is hereby awarded compensation at a rate of $39.00 per week, for a period beginning May 13, 1972, and continuing in accordance with the provisions of the Workmen's Compensation Act, interest to be paid according to law, together with $750.00 for funeral expenses.