Bittner *v.* Saltlick Township, Appellant.

Argued April 20, 1933.

Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

*H. E. McCamey* of *Dickie, Robinson & McCamey,*
and with him *William W. Matson,* for appellant.

*E. D. Brown,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1933:

For several weeks prior to November 8, 1930, C. J.
Bittner, the claimant in this workmen's compensation
case, was employed by the Supervisors of Saltlick
Township, Fayette County, as a laborer in road re-
pair work. About four o'clock in the afternoon of that
day, while he and a fellow workman were loading a
stone of irregular dimensions and weighing about two

hundred pounds upon a wagon, an incident occurred which claimant thus described: "We went to throw the stone [on] the wagon and we didn't get it up quite high enough and it started back and I throwed myself sideways to turn it over so it would not fall back on me."

As to the effects of this sudden muscular effort, claimant testified it "seemed like something tore" in the region of his heart, followed by a burning sensation in his throat and a tendency toward nausea. Notwithstanding these symptoms, claimant continued light work until quitting time, walked about a quarter of a mile to his home, told his wife about the circumstance and complained of increasing pain; he was put to bed and Dr. F. W. Conlon, his family physician, summoned about eleven o'clock.

Dr. Conlon testified he found claimant in an extreme state of shock, with sub-normal temperature, rapid pulse, perspiring and complaining of severe pain in his chest; he made a diagnosis of angina pectoris.

Bittner was confined to bed for ten days and to the house for about one month. Dr. Conlon, after treating him until June, 1931, removed from the vicinity.

No petition for compensation was filed until September 12, 1931. The proceedings thereunder resulted in an award by the referee on May 10, 1932, under section 306 (a) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of April 13, 1927, P. L. 186, of compensation for total disability, beginning November 16, 1930, and to continue, within the limitations of the act, so long as claimant's disability remained unchanged. Upon the employer's appeal, the board affirmed the award, and, upon appeal to it, the court below dismissed the employer's exceptions and entered judgment upon the award. This appeal is by the employer from that judgment. The judgment, as entered, cannot be af-

firmed because we are unable to find in the record as it now stands any basis for an award for total disability beyond June, 1931.

It is not controverted by counsel for the employer and its insurance carrier that there was evidence from which the compensation authorities could reasonably conclude that claimant suffered "an accident" in the course of his employment; nor can it be questioned that he was totally disabled (from some cause or a combination of causes) from its date until June, 1931, or that he was, at least partially, disabled down to March 17, 1932, the date of the last hearing.

The main controversy turns upon the question whether claimant's disability resulted from the accident, or from the natural development and progress of certain pre-existing chronic diseases.

The only reasonable inference, deducible from all the medical testimony, is that for months, and probably years, prior to claimant's employment by the supervisors he had been afflicted with chronic myocarditis, endocarditis and arteriosclerosis. There was also testimony from which the compensation authorities could find that the sudden muscular effort put forth by claimant to prevent the stone from falling off the wagon temporarily aggravated these ailments, and that the accident, together with his subsequent work and the exertion of walking home, initiated the attack of angina pectoris with which he was suffering when his physician arrived. This was the effect of the testimony of the family physician. Moreover, one of the medical experts called by defendant, Dr. Thomas A. Miller, who examined claimant on February 11, 1932, expressed the opinion that "something happened while he was working at that stone lifting" and that the effort resulted in "some temporary aggravation" of claimant's condition.

On the other hand, Dr. G. F. Berg, also called by

defendant and who had claimant under observation in a hospital for one week in February, 1932, said he thought the attack referred to was "pseudo-angina pectoris," and testified: "After listening to the patient and his doctor, my own examination, I am firmly of the opinion that the history he gives of the stone slipping had no connection with his present condition—and his condition is not the result of that stone slipping, and the arteriosclerosis which his doctor stated he took care of him for that night is not associated with the slipping of that stone."

Dr. Conlon said: "Angina pectoris in itself is not a disease, it's a symptom complex of many diseases." A part of his testimony reads: "Q. Doctor, as a matter of fact, angina pectoris is not of traumatic origin, is that not a fact? A. Angina pectoris is usually initiated by some sudden effort, muscular effort...... Q. You didn't have any history of any severe injury to the chest muscles? A. No. Q. Find any such evidence? A. No. '...... The only symptoms I found, the man was in a state of shock, with sub-normal temperature, rapid pulse, perspiring and complaining of severe pain. Q. And all of that could have occurred naturally without any accident? A. Yes. Q. And would the fact it was supposed to have occurred many hours before you saw him, and that he walked home, lead you to any other conclusion than the attack was progressive? A. The attack was apparently progressive because the man was able to complete his day's work according to his testimony."

This contrariety in the opinions of the medical experts was for consideration and disposition by the compensation authorities, but, when every conflict has been resolved in favor of the claimant, it does not follow that the award can be sustained.

There was no competent evidence that his total disability continued beyond June, 1931. Dr. Conlon

treated him until that time and, with reference to the then existing extent of his disability, testified: "I told him not to do any hard work that would take a considerable amount of effort, just as a matter of safety and precaution. Q. In your opinion is he able to do any kind of work, labor, now? A. I have not examined him since June, 1931. Q. Well, was he in June, 1931? A. No, unless it was a clerical position, something not requiring muscular effort. It would not be advisable to give him laborious labor, a man who had suffered such an attack." As to claimant's chronic ailments, there was testimony that they are permanent.

We, therefore, here have a case of the aggravation of existing and chronic ailments by an accident in the course of employment.

In such cases the burden is upon the claimant to show that his existing diseases were aggravated to such an extent that the aggravation became the independent cause of the disability for which he claims compensation. In other words, the only compensable disability is that shown by the claimant to have resulted from the accident, as distinguished from the disability resulting from the natural progress and development of any diseases with which he may be afflicted and for which the employer is in no way liable.

Instead of attempting to meet this burden, the claimant in this case simply asserted that every fraction of disability he may now have resulted from the accident. An examination of the record, in the light most favorable to the claimant, not merely fails to support this contention but positively refutes it.

We may also observe that claimant's testimony relative to the regularity of his previous employment and the extent of his former earning capacity was vague and evasive. These matters were peculiarly within his knowledge and should have been fully and frankly stated in order that the referee and board might have

a proper basis for determining to what, if any, extent his present earning power has been affected by the accident.

Another contention, advanced by counsel for the employer at the time of the first hearing before the referee and continued throughout the proceeding, was that notice of the accident was not given to the employer until July 24, 1931—more than ninety days after it occurred. This feature of the case may be quickly disposed of. Claimant's wife testified she notified one of the supervisors of the injury within the week following the accident. This supervisor contradicted her testimony, but the issue was one of fact, and, as there was evidence to support the finding that notice was given, the court below was entirely correct in holding it had no power to disturb that finding.

As claimant and his counsel seem to have misapprehended the extent of the burden of proof resting upon the claimant in a case of this kind, we have concluded that the interests of justice will be best served by affording them an opportunity to show what, if any, disability resulted from the accident as distinguished from the disability attributable to the natural progress of the diseases from which claimant was suffering when it occurred, together with the right to the employer to present additional evidence upon the issues indicated.

The judgment is reversed and the record remitted to the court below to the end that it may be returned to the board for further proceedings not inconsistent with this opinion.