Byars *v.* Howard Cleaners, Inc., et al., Appellants.

Argued May 3, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*James J. Burns, Jr.,* with him *Gustav M. Berg,* for appellants.

*Herman Lipsitz,* for appellee, filed no brief.

OPINION BY PARKER, J., June 24, 1940:

The claimant in this workmen's compensation case has a judgment for total disability after favorable awards by a referee and the board. We are all of the opinion that the judgment must be reversed.

The question raised here is whether the evidence is sufficient to show that an existing heart ailment was aggravated by an accident said to have occurred while the claimant was at work for defendant on March 16, 1938. On that day, claimant was pushing a canvas bag which had an iron rim about the top, was supported by wheels, and was full of clothes, all weighing something over 100 pounds, when the wheels were caught in a rut. It was necessary to push the container a distance of 20 or 25 feet, and it was a labor regularly performed by the claimant. The receptacle was tipped and in righting the load claimant came in contact with the iron rim. After the clothes were moved claimant called for a drink of water, continued his day's work, and returned home. In the evening he was taken with a

severe paroxysm due to an affection of the heart and it was discovered that he had a slightly discolored spot on his chest. It is not open to question that since that date claimant has been totally disabled as the result of a coronary occlusion caused by "sclerosis of the coronary arteries with formation of a clot within the coronary artery."

Claimant proved by his own testimony that in 1936 he had a similar attack diagnosed as of precisely the same nature as the attack in 1938, except that the earlier attack was not of traumatic origin; that he was incapacitated for a time; that he was attended by a physician; that he was cared for in at least one hospital which he left against the advice of his physician; and that after a period of rest at Baltimore and at home he returned to work and worked regularly until March 16, 1938, as a cleaner, dyer, and rough spotter. Dr. Mullins, claimant's witness and physician, testified that between the acute heart attacks in 1936 and 1938, claimant told him that "spells of sub-sternal pain and breathlessness have become [had become] increasingly frequent."

The burden was on claimant to prove that his disability was the result of an accident: *Gausman v. Pearson Co.*, 284 Pa. 348, 352, 131 A. 247. Since claimant's condition is complicated by an existing heart condition from which he was suffering, "the burden is upon the claimant to show that his existing diseases were aggravated to such an extent that the aggravation became the independent cause of the disability for which he claims compensation": *Bittner v. Saltlick Twp.*, 109 Pa. Superior Ct. 406, 411, 167 A. 483.

The natural sequence of events shown in this case was not sufficient to establish the fact that the disability was due to an accident; unequivocal medical testimony was essential: *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 267, 3 A. 2d 995. This will clearly appear when we examine the nature of the testimony offered in support of the claim.

Two physicians, Drs. J. J. McCarthy and William L. Mullins, were called by the claimant in an effort to show that the alleged accident aggravated his condition so as to become an independent or superinducing cause of disability. One physician was called by defendant as an expert who testified unequivocally that in his opinion the coronary thrombosis and resulting disability were due solely to an existing constitutional deformity, were pathological changes, and were in no respect due to trauma.

Dr. McCarthy was claimant's family physician and had attended him since 1932. After the attack in 1938 he turned the patient over to a heart specialist, the other expert. Dr. McCarthy testified that claimant had a number of severe heart attacks prior to 1938. We quote from his testimony: "Q. So from the history that you had, you cannot say as to what brought about this particular attack of March 16, 1938? A. From the history that I had, no, I could not say definitely. Q. Doctor, taking into consideration the history that you received that night, and the condition that you have seen him have, and it was acute that you sent him to Dr. Mullins, what is your opinion? Was there an aggravation of an old condition here? A. Well, I didn't know until today how heavy that basket was or how the accident happened. Q. Taking everything into consideration. A. I will say that it could have caused— the accident aggravated the lesion in the heart."

The other expert called by claimant, Dr. Mullins, a heart specialist, cared for him from October 28, 1936, until November 10, 1936, and attended him again after March 16, 1938. We quote from his testimony: "A. Well, in 1936, he had closure of one artery vessel, and in 1938, he had another. Q. Is there any relationship in the two of them? A. Well, it branches from the aorta there. Q. Could this condition in 1936 when he left the hospital, in 1938 be aggravated by the accident he gives us a history of? A. I believe it could. Q. And

is that the cause of his acute condition that you had him in the hospital for in 1938? A. No, I don't think it actually caused the clot to form. Q. I mean the aggra-vation? A. Well, his pain started when he lifted the basket and apparently continued until I saw him the following morning ...... By the Referee: Q. Doctor, it is then your opinion that the history he gives of an accident for this last time you seen him in March was an aggravating cause to his present condition? A. Yes. Q. And that is causing his disability at the present time? A. The second coronary occlusion is causing his disability ...... By Mr. Berg: Q. Doctor, the cause of the second occlusion is the clot? A. Yes. Q. And that clot you don't feel is produced by this accident, do you? A. I don't believe so." The doctor then called attention to the attack of 1936 and the severe attacks between that date and March, 1938. "Q. In other words, anything this man did might hasten this condition? A. It would produce pain; any un-usual effort will produce pain but may not give further structural change in the heart ...... Q. Do you rule out the aggravation as being any part of this man's disability today? A. Well, the things come so closely together, we cannot separate them. Q. Well, it is your opinion that this man's aggravation has something to do with this today? A. It may or may not but his pain started after he lifted. Q. And after this lifting, it is your opinion that it was aggravated. The lifting ag-gravated his previous lifting condition ...... A. The lifting aggravated his previous condition and when I saw him, he had signs of coronary occlusion."

The testimony of claimant's experts is not "unequivo-cal medical testimony" and will not support the award. As is pointed out in *Elonis v. Lytle Coal Co.*, supra (pp. 270, 271), the ruling in *Fink v. Sheldon A. & S. Co.*, 270 Pa. 476, 113 A. 666, was modified in *McCrosson v. Phila. Rapid Tr. Co.*, 283 Pa. 492, 129 A. 568; and *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 206, 133 A. 256, so

that the rule now is as stated in the Vorbnoff case: "The expert would have to state plainly the professional view that the accident had materially 'contributed' ...... to the ailments from which claimant suffers, in the sense of being, if not the sole cause, then, at least, the 'superinducing cause' thereof ...... That is to say, the witness would have to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that 'in his professional opinion the result in question came from the cause alleged'; for, according to our latest pronouncement on this subject, a less direct expression of opinion would fall below the required standard of proof, and therefore would not constitute legally competent evidence."

This testimony came far short of meeting that standard. It must be borne in mind that if there was an accident it was a very slight one. Dr. McCarthy said he could not say "definitely" what brought on the attack but that the lifting "could" have caused it. That eliminates his support. Dr. Mullins also used the expression "could" with reference to the connection of the accident and the disability, and testified that claimant's present condition was due to an occlusion, the presence of a clot, and then added that the accident did not cause the clot. The answer he subsequently made in reply to a leading question of the referee did not add anything to his testimony. This testimony also fails to meet the test, for it failed to show by unequivocal testimony that the alleged accident materially contributed to the heart ailment so as to become the "superinducing cause thereof". In addition, his opinions were vague and uncertain.

If each of two physicians who attended claimant, one of whom was a heart specialist, could only guess as to the causal connection, certainly a layman could not do more. "The lack of certainty so clearly apparent in their evidence demonstrates the soundness of our position that no layman could arrive at a conclusion of

causal connection in this case with sufficient certainty to sustain an award": *Elonis v. Lytle Coal Co.,* supra (p. 270).

Our attention has been called to the conduct of the hearing by the referee. The unjudicial attitude of that official toward defendant's counsel and its defense was such that it should have received a reprimand from the board and, if repeated, his conduct should have been called to the attention of those who are responsible for the appointment of referees.

Judgment reversed and here entered for the defendant.