## Euker *v.* Welsbach Street Lighting Company of America, Appellant.

Argued March 12, 1942.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Paul Maloney*, with him *Evans, Bayard & Frick*, for appellant.

*Fred B. Creamer*, for appellee.

OPINION BY BALDRIGE, J., April 15, 1942:

The claimant obtained an award before the compensation authorities which was sustained by the court below. This appeal followed the entry of judgment thereon.

The decedent, 54 years of age at the time of his death, had been employed for many years by the defendant, the appellant herein, as a lamplighter. He had worked

regularly and was apparently in moderately good health prior to the time of the accident. The decedent entered into an agreement with the defendant, self-insured, which described the accident, which occurred April 13, 1938, as follows: "Taking ladder out of car splinter went into right little finger and became infected." Compensation for total disability was paid from April 26, 1938, until his death on March 24, 1939.

The only question in controversy is whether the evidence established a causal connection between the accident and the death.

Euker was admitted to the Frankford Hospital on April 30, 1938, suffering from an infection of the right hand, with gangrene in the fourth and fifth fingers. The records of the hospital state that on entrance he appeared to be "a well nourished white male—not acutely ill except for right hand and quite alert mentally." There was a further notation that he had diabetes and that his heart was slightly enlarged. He remained in the hospital until September 10, 1938, when he was discharged and instructed to return periodically for physiotherapy treatments. While in the hospital his temperature ran high for approximately 80 consecutive days, reaching at times 103 and 104. Owing to the failure of the infection to respond to local treatment the decedent's fourth and fifth fingers were amputated and a portion of his hand cut away. This was followed later by further incisions in the wrist for drainage purposes. On the 9th day of May there was an entry in the hospital records that the blood vessels in his hand showed advanced arteriosclerosis. In June he had bronchial pneumonia. Owing to an anemic condition he was given blood transfusions in June and July.

Upon his return home he was unable to resume work and went to the hospital at frequent intervals for treatment, but gradually grew weaker. In January, while

at the hospital for a treatment, he had a heart attack and thereafter was daily attended by a physician until his death, the immediate cause of which as stated in the death certificate was:

"Hypertensive c. v. [cardiovascular] nephritis
Other contributory causes of importance:
Myocarditis?"

Dr. Samuel H. Stein, who attended the decedent from January 3, 1939, until his death, testified that his first examination showed that the decedent had myocarditis, an enlarged heart, and high blood pressure. He gradually grew weaker and on the date of his death suffered severe pains over and around his heart. This witness, in answer to a question whether his "death was hastened or accelerated by the infection which he suffered" replied: "Yes, there is no question that a man that is hospitalized for a period of months, due to a suppurative infection, plus the fact that he was bed ridden at home due to this infection, I'm definitely stating that this condition hastened his end." The doctor stated further that Euker's high protracted fever, the excessive white corpuscle count in his blood, and other symptoms, indicated to him that he had a general systemic infection following, and attributable to, the accident. He was of the opinion that the high temperature was due to, and his diabetic condition aggravated by, the absorption of the toxins. He stated that "absorption of his toxins, due to this suppuration, with debility over a period of months, hastened his death."

Dr. Samuel Bellett, called as an expert, who had not attended or seen the deceased, in answer to a hypothetical question containing decedent's medical history, testified that there was a direct causal connection between the accident, the infection and the death that followed. He stated further that the infection resulted "in severe changes in all the organs of the body." This

was shown, he said, by the fact that while he was diabetic the decedent had been taking very little insulin prior to his entering the hospital, and while there the doses were materially increased up to 305 units at certain times, which indicated a marked derangement of the functions of his organs; that infection resulted in more severe consequences in a diabetic than in one who is free of that disease. He stated that while Euker's condition may have apparently improved, as his edema, etc. had disappeared, the results of the infection remained. The damage to his heart produced by the infection was never repaired. Dr. Bellett was of the opinion that the infection Euker had following the injury caused anemia and changes in the heart muscle, kidneys, etc., and "aggravated his condition, which resulted in his death."

On cross-examination this witness was asked: "Q. And, your opinion, I gather, is that the severe infection he had while he was in the hospital, with the elevated temperature for a rather sustained period of time, and the anemia acting concurrently, we'll put it, with the diabetes and the arteriosclerosis, hastened his death? A. Yes, substantially. I mean, I place the anemia as a complicating factor. The main factor is the infection, the prolonged infection." The witness further stated that had it not been for the infection the deceased "would have lived for a longer period of time than he did, barring any other accidental eventuality."

Dr. John B. Ludy, called on behalf of the defendant, testified that at the instance of the employer he visited the decedent 23 times while he was in the hospital and at his home, but he did not attend him medically. He thought no one could say that the splinter was a cause of the ultimate death. He did state, however: "The splinter injury, because of the fact that this man had diabetes, made for a gangrene;" and, if it had not been for the splinter injury he probably would not have died at the time he did.

Dr. R. Ralph Blumenfield, who attended the deceased while he was in the Frankford Hospital, was called by the defendant. He testified that there was a connection between the splinter and the death, stating: "I feel" that the splinter injury hastened Euker's death, which is equivalent to saying "I believe" and meets the legal requirements: *Jones v. Phila. & Reading C. & I. Co.,* 285 Pa. 317, 319, 132 A. 122; *Elonis v. Lytle Coal Company,* 134 Pa. Superior Ct. 264, 271, 3 A. 2d 995.

Dr. G. Harlan Wells, the last physician called on behalf of the defendant, gave his opinion based on the reading of the notes of testimony and the hospital charts. When asked for his professional opinion whether the splinter was the cause of Euker's death, testified as follows: "No, I could not say that, because of the fact that I believe this man might have had a cardiac breakdown and died even before the infection occurred. His condition was such that disturbances of his heart, coronary obstruction and so forth, might have occurred at any time," independent of any infection. He admitted, however, that the infection which Euker suffered caused a hastening of the degenerative processes of his vital organs.

The burden rested upon this claimant to prove by unequivocal medical testimony that the accident materially aggravated the existing disease of her husband to such an extent that the aggravation became the independent cause of death. By that it is not meant that the accident was the sole or exclusive cause. In other words, the claimant was required to show that the accident materially contributed to the death, rather than that the death resulted from the natural progress and development of any disease with which the deceased may have been afflicted, for which the employer is not liable: *Bittner v. Saltlick Township,* 109 Pa. Superior Ct. 406, 411, 167 A. 483; *Byars v. Howard Cleaners, Inc. et al.,* 140 Pa. Superior Ct. 188, 190, 13 A. 2d 883. We think she met that burden.

In *Monahan v. Seeds & Durham et al.*, 336 Pa. 67, 70, 6 A. 2d 889, cited by the appellant, the deceased was employed as a day timekeeper and worked over time a particular night to prepare a report to submit to the government. He was suffering from advanced arteriosclerosis and died as a result of a cerebral hemorrhage. The board held that death was due to overexertion. The lower court and this court upheld the award. The Supreme Court reversed, holding that the evidence was insufficient to establish an accident; that the death was the result of the natural progress of a preexisting disease with which the employe was afflicted. Mr. Justice DREW, in the course of the opinion stated however that the right to compensation, in event of death due to an accident, will not be defeated because an employe had a chronic ailment which rendered him more susceptible to injury than an ordinary person would have been.

In this case admittedly there was an accident and a liability to pay compensation as shown by the agreement executed by the parties. In *Lafferty v. Carbo-Oxygen Company et al.*, 122 Pa. Superior Ct. 425, 185 A. 883, the essential facts are very similar to those before us. There, the decedent, a man 61 years of age, bruised his leg in the course of his employment. Infection followed, which developed into chronic periostitis which aggravated a preexisting arteriosclerosis, which caused the heart muscles to become gradually worse until he died of myocarditis. Compensation was awarded and we affirmed the judgment entered thereon. We there said, p. 427: "We cannot understand the testimony of the physicians as meaning anything else than that the existing physical condition of the deceased was aggravated and his death accelerated by the injury received in his employment. Such being the case the claimant is entitled to recover compensation. The fact that the

deceased had a chronic ailment which made him more susceptible to an injury than an ordinary person will not defeat his right to compensation. On the contrary, if the preexisting ailment was aggravated and his death accelerated by the injury, then under the law he was entitled to compensation. (citing cases)." See, also, *Flowers v. Canuso & Son et al.*, 115 Pa. Superior Ct. 234, 175 A. 287.

So here we have a preexisting ailment which very definitely was aggravated by the injury and as a result his death was accelerated.

Judgment is affirmed.