Heinzl *v.* Jones & Laughlin Steel Corporation, Appellant.

Argued April 11, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*William A. Challener, Jr.,* with him *William A. Challener* and *Challener & Challener,* for appellant.

*John E. Evans, Jr.,* with him *Evans, Evans & Spinelli,* for appellee.

OPINION BY ROSS, J., July 19, 1945:

This is a workmen's compensation case in which the referee made an award in favor of the plaintiff, the widow of Frank Heinzl. The award was sustained by the Compensation Board and by the County Court of Allegheny County.

Frank Heinzl was at the time of his death on May 23, 1942, in the employ of the defendant and had been for more than a year prior thereto. On May 12, 1942, in the course of his employment, Heinzl, while descending a ladder, slipped and fell backwards onto a metal floor, landing upon his elbows and buttocks. He resumed work but three quarters of an hour after the fall he complained of headache and dizziness and was sent to the South Side Hospital for examination and diagnosis. The diagnosis showed that he was suffering from sprain of the muscles of the back of the neck accompanied by vomiting, vertigo and headache. The day following Heinzl was released from the hospital with the diagnosis that the sprained neck muscles were cured but the headaches were not improved. He returned to work on May 16 and worked until his death on May 23. On the latter date he was found unconscious on the

floor of the mill near a machine, taken to the hospital and died about an hour later, the final diagnosis being "Rupture aneurysm artery at base of brain (carotid)."

The deceased, prior to May 12, had a preexisting congenital aneurysm of his carotid artery but aside from that was in good health, was a regular worker and had never been known to complain of poor health. The basic question before the referee was whether the aneurysm ruptured spontaneously as a result of its progressive inevitable growth or whether it ruptured as a result of the accident on May 12. The referee, affirmed by the board, found that it ruptured as a result of the accident. Compensation was awarded.

The burden was on the claimant to prove that the accident materially contributed to the death of her husband rather than that his death resulted from the natural progress and development of the preexisting aneurysm. *Bittner v. Saltlick Township,* 109 Pa. Superior Ct. 406, 411, 167 A. 483; *Byars v. Howard Cleaners, Inc. et al.,* 140 Pa. Superior Ct. 188, 190, 13 A. 2d 883; *Euker v. Welsbach Street Lighting Company,* 149 Pa. Superior Ct. 78, 25 A. 2d 758. The compensation authorities held that she had met that burden, and we agree.

The fact that the deceased had a congenital weakness which made him more susceptible to an injury than another person will not defeat the right to compensation. On the contrary, if the preexisting ailment was aggravated and his death accelerated by the injury, then under the law claimant was entitled to compensation. *Lafferty v. Carbo-Oxygen Co. et al.,* 122 Pa. Superior Ct. 425, 185 A. 883; *Roland v. Frantz et al.,* 134 Pa. Superior Ct. 24, 3 A. 2d 279.

It is the duty of this court to examine the record to determine whether the findings of fact made by the referee and the board are supported by legally competent evidence, and whether on such findings the law has been properly applied. *Smith v. Welsh Bros.,* 102

Pa. Superior Ct. 54, 156 A. 598; *Watkins v. Pittsburgh Coal Company,* 278 Pa. 463, 123 A. 461; *Melini v. Saltsburg Coal Mining Company et al.,* 119 Pa. Superior Ct. 356, 181 A. 330, and not to weigh the evidence to determine its probative value. *Bradley v. Pioneer Oil Company,* 109 Pa. Superior Ct. 585, 167 A. 660. The findings of the referee and the board have the effect of a verdict of a jury, and we must review the evidence and the inferences therefrom in the light most favorable to the claimant. *Melini v. Saltsburg Coal Mining Company et al.,* supra.

To establish the connection between the accident and the death, the claimant called Dr. Paul R. Sieber, whose opinion was expressed after examining the hospital records, the history of the case and the autopsy report. Dr. Sieber's testimony in part follows: "Q. Taking the history, Doctor, and the symptoms the man exhibited, and the nature of his fall, will you tell us what the mechanism would be; what the effect would be upon the head and the brain of a man falling on a metal floor, backwards, such as is described here? A. The impact of the blow would be structural—to the spinal column, to the base of the skull, and in that way could produce a condition within the skull itself, and produce such symptoms as have been described in the history that you read me. ...... Q. And in your opinion, in this case was that the effect? A. Well, I can only answer that by the history. If those are the facts that occurred, those deductions, certainly, in my opinion, follow along with it. ...... A. To repeat the question as I understand it is, that if the aneurysm ruptured spontaneously on the 23d, did the fall have anything to do with it? My opinion, as I stated before, is that it did and it is based on these statements as recorded in the history following his accident of the 12th of May, *i.e.,* that he had all of the typical symptoms of an intra-cranial disturbance, those symptoms being headache, dizziness and vomiting, and that he did not have them preceding this

accident, and that they did persist, according to the statements made here, up until the time of his death, when the final outcome was decided by the rupture of the aneurysm, either spontaneously or by a superimposed other accident. ...... Q. Now then, your theory is that the accident of the 12th had some effect upon his death, whether he had another accident on the 23d or whether he fell over as a result of the disturbance that existed? A. That's my opinion. ...... Q. So the second occurrence may or may not be an accident, and has no effect upon your theory that the first accident was the thing that led to his death? A. I would put it this way: It precipitated events, hastened events; it allowed this to rupture on the 23d, and that, of course, is based on the fact that this man showed evidence of intra-cranial disturbance by the symptoms shown following his accident of the 12th in the history."

The medical testimony supports the findings of the compensation authorities. Moreover, it has frequently been held that where the disability complained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the entire absence of expert opinion. *Paul et al. v. Atlantic Refining Company*, 304 Pa. 360, 156 A. 94; *Mohr v. Desimone & Sayers*, 110 Pa. Superior Ct. 44, 167 A. 504; *Benci v. Vesta Coal Company*, 131 Pa. Superior Ct. 435, 200 A. 308. In the instant case we have the following sequence of facts, all established by competent testimony; prior good health of the deceased, congenital aneurysm, a fall on May 12, symptoms of intra-cranial injury appearing 45 minutes after the fall and continuing until his death on May 23, 1942, and an autopsy report showing that the deceased died of a ruptured aneurysm.

The Workmen's Compensation Board is the final fact-finding body in compensation cases; the credibility of witnesses is for the board and where there is competent

and substantial evidence sufficient to support the findings of fact made by the board, such findings are conclusive. *Yanik v. Pittsburgh Terminal Coal Corporation et al.,* 150 Pa. Superior Ct. 148, 27 A. 2d 564. In the case at bar the board found for the claimant and it is our opinion that the evidence upon which the board's findings were predicated was competent and substantial and that the law was properly applied by the board and by the court below.

Judgment affirmed.