Frick *v.* Pittsburgh School District, Appellant.

Argued April 11, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Oscar G. Peterson,* Assistant Solicitor, with him *Mortimer B. Lesher,* Solicitor and *Niles Anderson,* Assistant Solicitor, for appellant.

*P. J. McArdle,* for appellee.

OPINION BY HIRT, J., July 20, 1950:

This is a widow's claim proceeding under the Workmen's Compensation Law, following the death of her husband. The Referee found that her husband suffered an accident in the course of his employment with defendant and that his death was "hastened and accelerated" by it. The Board affirmed the Referee's findings and the lower court entered judgment on the award. The findings are sufficiently supported by substantial and legally competent evidence and the law has been properly applied. We therefore may not disturb the judgment. *Heinzl v. Jones & Laughlin Steel Corp.,* 157 Pa. Superior Ct. 454, 43 A. 2d 635.

Except as to the severity of the injury and whether death resulted from it, there is little dispute. William G. Frick, claimant's decedent, was the custodian of Peabody High School in the employ of the School District of Pittsburgh. His duties were supervisory; he had in all about fourteen janitors and cleaning women under him, who did the actual work. One of them, the only eyewitness to the occurrence, testified that about 2:30 in the afternoon of June 23, 1947, Frick stooped to get some sponges, for use by the witness, from a steel cupboard and, in straightening up, struck his head against a projecting metal lock of the cupboard. He was dazed by the blow and fell into a chair behind him. The resulting injury, according to this witness, was a "wound or gash" on his forehead at the hairline and it was bleeding. Frick later went to the office of the physical education instructor in the school building and there an antiseptic was applied to the wound. The instructor noted a

mark on Frick's forehead, with "a little serum oozing out and a little blood" but he said the cut was not deep. Claimant on the other hand described the wound as an ugly open gash about one inch long. Frick arrived home at his usual time, about 5:30 that afternoon. Claimant testified without objection that he then told her of the accident and the injury to his head. He complained of dizziness and later became nauseated. He was found dead in his bed the following morning.

Clearly, decedent suffered an injury from accident and the evidence of disability and death, in sequence within a short period of time, suggests, although it does not establish, a relationship between the two. Claimant's husband was 56 years old. He had been under the care of Dr. William F. Weaber since February 1944. Dr. Weaber testified that Frick probably had suffered from hypertension before that date and that he had developed a moderate amount of arteriosclerosis with subsequent enlargement of the heart. Frick responded to treatment according to Dr. Weaber who testified that "this man was fully compensated over these years after his pressure came down, in other words, he had no evidence of any heart failure, . . ." Frick worked steadily and had not lost any time in his employment for at least eleven months before his death.

Competent medical testimony is present in this case to the effect that the accident materially aggravated existing disease, and that Frick's death was hastened thereby. Cf. *Euker v. Welsbach St. Lighting Co.*, 149 Pa. Superior Ct. 78, 25 A. 2d 758. It is unimportant therefore that the injury may not have been severe; it is the seriousness of the result that controls. In the light of all the circumstances, including decedent's preëxisting physical ailments known to Dr. Weaber, he stated his professional conclusion thus: "I do believe that the injury brought on his death". And he gave as the basis for that opinion that the death of claimant's husband re-

sulted from a number of factors which he attributed to the accident, including nervous shock causing overstrain of the heart through circulatory embarrassment and some paralysis of the vaso motor mechanism. Where, as here, medical testimony is essential on the issue of causal connection between an accident and death, causation must be shown by positive expert opinion evidence of such quality and quantity as to amount to more than mere probability or conjecture. *Coder v. Pittsburgh Des Moines Steel Co.*, 142 Pa. Superior Ct. 407, 16 A. 2d 662. The conclusion of Dr. Weaber stated as *his belief* amounts to such assertion of professional opinion and meets the required standard of proof. *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 271, 3 A. 2d 995.

Appellant stresses the testimony of defendant's witnesses and particularly of Dr. Theodore R. Helmbold, a pathologist of wide experience, who performed an autopsy on the body of the deceased. From a thorough examination of all organs of the body, with particular reference to the heart and the circulatory system, Dr. Helmbold testified in detail as to his findings. In summary his testimony is that he found a very advanced state of generalized arteriosclerosis and acute chronic hypertrophic myocarditis. In addition, this witness also found the bladder and kidneys chronically diseased. It was his judgment that one, with a heart and arterial system, such as decedent had, "is a candidate for sudden death at any time. His life hinges on a very delicate balance and he might die at any time". It was Dr. Helmbold's professional opinion that the superficial wound on the forehead of the deceased, which he found, "was entirely unrelated to this individual's death.

The compensation authorities might have adopted the conclusion of defendant's medical expert and refused compensation, but they did not. On the contrary they accepted claimant's testimony and the opinion of her medical expert. The credibility of expert witnesses and

the weight to be attached to their testimony are matters exclusively for the Board and in a conflict of opinions in the medical testimony it is for the Board to decide which conclusion it will adopt. *Coder v. Pittsburgh Des Moines Steel Co.*, supra. Where, as here, the findings are supported by substantial and legally competent proof, they and the inferences to be drawn therefrom are as conclusive as the verdict of a jury. *Johnston v. Payne-Yost Construction Co. et al.*, 292 Pa. 509, 141 A. 481.

Judgment affirmed.