Darmopray *v.* Budd Manufacturing Co., Appellant.

Argued March 29, 1951. Before RHODES, P. J. HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Alexander F. Barbieri,* for appellant.

*David L. Ullman,* with him *Samuel H. Torchia,* for appellee.

OPINION BY DITHRICH, J., July 19, 1951:

On October 15, 1943, Dmitro Mytzak, while in the course of his employment with defendant, suffered an accidental injury which necessitated his hospitalization for a period of two weeks. He received compensation from October 22, 1943, until his return to work November 9, 1943. However, on February 5, 1944, being very ill, he was taken home from work by the employer's nurse. Three days later he was admitted to the Episcopal Hospital in Philadelphia, where he died February 22, 1944. The death certificate recited uremia as the immediate cause of death and the hospital records indicated a final diagnosis of uremia, hypertensive cardiovascular disease, benign prostatic hypertrophy.

Tillie Mytzak,[1] widow of the deceased employee, on behalf of herself and a little girl to whom she and the decedent had stood in loco parentis, petitioned for compensation under the Workmen's Compensation Act. By way of defense defendant averred "The decedent died solely as a result of systemic conditions unas-

---

[1] During the pendency of this proceeding the widow claimant became incompetent and Michael Darmopray was appointed guardian of her estate.

sociated in any way with any accident sustained in the course of his employment."

The referee disallowed the claim but the Board remanded the case for the purpose of admitting certain testimony of claimant's medical witnesses which the referee had excluded. After a rehearing the referee again disallowed the claim, finding that the "disease which caused the death of Dmytro Mytzak was neither caused nor aggravated by the accident." Substituting its own findings for those of the referee pertaining to the issue of causal connection, the Board reversed the referee, finding as a fact "that the injury sustained by the decedent aggravated his pre-existing condition and caused his death." The award was affirmed by the Court of Common Pleas of Philadelphia County and judgment was entered in favor of claimant. This appeal followed.

In resolving the difficulties in this case we must review the evidence in the light most favorable to the claimant, for whom the Board has found, and must give her the benefit of every inference reasonably deducible therefrom. *Lemmon v. Pennsylvania Department of Highways,* 164 Pa. Superior Ct. 254, 63 A. 2d 684. Bearing that in mind, in addition to the facts already noted, the record discloses the following. The accident occurred when a polishing manifold wheel struck decedent's face, resulting in a laceration of the lower lip, the breaking of two teeth, and the loosening of a third which was later extracted. He was taken home in a weakened condition, complaining of pain in the left side of his head, and on the following day entered the hospital. He returned to his job though his physician, Dr. Louis P. Gefter, felt he was too sick to do more than light work. He continued to work until he was taken home on the fifth of February, at which time he bled from the nose to the extent that Dr. Gefter had to administer a hypodermic to check the

bleeding. Later, having difficulty in passing urine, he was finally sent to the Episcopal Hospital where he died.

Dr. Gefter first attended decedent in December, 1941, his complaints then being shortness of breath, slight swelling of the ankles, and painful knee joints. A diagnosis of "hardening of the arteries with high blood pressure—hypertensive cardio-vascular disease with polyarticular rheumatism" was made. At subsequent intervals decedent required Dr. Gefter's care for the same complaints. But from December, 1941, to the date of his accident, aside from periodic layoffs, he worked regularly with the single exception of a ten-week period of illness experienced about one year prior to his injury.

Following the accident he became very frail, lost weight, had no appetite, bled from the nose and mouth about twice a week. Moreover, he continually complained of pain in the left side of his head. These conditions continued until his death but were never in evidence prior to his accident. Nor did his attending physician consider him as being on the downgrade in the years preceding the accident.

In *Euker v. Welsbach Street Lighting Co. of America,* 149 Pa. Superior Ct. 78, 25 A. 2d 758, we held that a widow was entitled to compensation where her husband's death was accelerated as a result of the aggravation of a pre-existing ailment by an accidental injury sustained in the course of his employment.[2] In that case we said (p. 83) : ". . . the claimant was required to show that the accident materially contributed to the death, rather than that the death resulted from the natural progress and development of any disease with which the deceased may have been afflicted, for which

---

[2] Cases involving the same principle are collected in the second class of cases discussed in *Roylco v. Logan Coal Co.,* 146 Pa. Superior Ct. 449, 460, 22 A. 2d 434.

the employer is not liable: Bittner v. Saltlick Township, 109 Pa. Superior Ct. 406, 411, 167 A. 483; Byars v. Howard Cleaners, Inc. et al., 140 Pa. Superior Ct. 188, 190, 13 A. 2d 883." The same burden rested on claimant in the instant case.

The Board having found as a fact that claimant met the burden of establishing the causal connection between the accident and death, and the credibility of the witnesses being for the Board, the ultimate question to be decided in this appeal is whether there is competent and substantial evidence to support its finding. *Heinzl v. Jones & Laughlin Steel Corp.*, 157 Pa. Superior Ct. 454, 43 A. 2d 635. In our opinion the testimony given by claimant's medical witnesses was, in itself, such evidence. Dr. Gefter, the physician who attended the decedent from 1941 until the time of his death, from his own knowledge of decedent's health before and after the accident, stated: "It is my opinion that this man's injuries sustained as a result of an accident which occurred at work unquestionably aggravated his previously impaired health and . . . that aggravated and caused his death."

Dr. Bernard L. Lee, an expert in urology, who had not seen the decedent in his lifetime, but who when asked a hypothetical question incorporating all the facts we have here noted, including also statistics relating to blood pressure, replied, "There is a definite causal relationship between this accident and the patient's subsequent death." Upon being asked to explain in what manner the accident did affect the conditions resulting in the death, the doctor stated that with the increase in blood pressure following the accident, particularly diastolic, there was increased tension on the small arteries throughout the body, including the kidneys and the nose. This, he said, was the source of decedent's bleeding. Furthermore, he explained, this condition existing in the kidneys, dece-

dent went into anuria, which resulted in the retention of urea in the blood stream.

Defendant's own expert, Dr. George D. Shoup, disagreed with the opinions expressed by Drs. Gefter and Lee, but, in light of the Board's finding, that disagreement is immaterial, inasmuch as all conflicts in medical testimony are to be resolved by the compensation authorities. *Frick v. Pittsburgh School District*, 167 Pa. Superior Ct. 431, 74 A. 2d 659; *Houlihan v. Joseph J. Scheiter & Co.*, 166 Pa. Superior Ct. 85, 70 A. 2d 431.

Contrary to defendant's contention, our reading of the medical evidence convinces us that it is not equivocal, and not mere conjecture, but satisfies the evidentiary requirements of such testimony laid down in *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256, and *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995. The facts in the case of *Rich v. Philadelphia Abattoir Co.*, 160 Pa. Superior Ct. 200, 50 A. 2d 534, relied on by defendant, reveal medical testimony so obviously amounting to guesswork that it was declared insufficient on the issue of causal connection. The evidence here is not comparable.

A more serious objection to the competency of the medical evidence in this case is that Dr. Lee's testimony, after cross-examination, was proved to be based on the erroneous assumption that after the accident decedent's blood pressure increased, and the assumption that following the accident decedent failed to make a compensated recovery. Properly citing *Goebel v. Aschenbach & Miller Co.*, 142 Pa. Superior Ct. 315, 16 A. 2d 154, defendant asserts that the probative value of the testimony of Dr. Lee was worthless. While we agree that the doctor's testimony indicates reliance on a condition of increased blood pressure and a failure to make a compensated recovery, we do not agree that those elements were assumptions without foundation in the record. As testified to by

Dr. Lee, marked elevation of the diastolic pressure was the significant factor. It should be noted that although the record shows no increase in the systolic pressure after the accident, it nevertheless remained at an abnormally high level, and the diastolic pressure maintained a definite advance upward.

In the questioning relating to the element of uncompensated recovery, both counsel and Dr. Lee apparently were concerned with whether decedent was in all respects the man he was before the accident. Dr. Lee justifiably believed he was not. A reference to the testimony as we have noted it clearly supports the doctor's position.

There was some contradiction in the testimony regarding decedent's weight. It was testified that he lost weight following the accident, but Dr. Gefter's records showed a gain. This discrepancy was satisfactorily eliminated by Dr. Gefter's explanation that edema, or swelling, caused the increased weight, but actually decedent was becoming more frail.

Our holding that the medical testimony here is sufficient to support the finding of a causal connection between the accident and death of Dmitro Mytzak renders it unnecessary to consider the other arguments advanced by defendant.

Judgment affirmed.