**Alma BAILEY, Plaintiff-Respondent,**

v.

**Karl KERSHNER and LeClaire Brothers
Transfer, Inc., Defendants-Appellants.**

Nos. 8814, 8818.

Springfield Court of Appeals.

Missouri.

July 8, 1969.

———◆———

B. B. Turley, Routh & Turley, Rolla, for appellant, Karl Kershner.

Northern, Williams, Smallwood & Williams, Rolla, for appellant, LeClaire Bros. Transfer, Inc.

Philip M. Moomaw, Moore & Moomaw, Rolla, for respondent.

TITUS, Judge.

On the morning of August 20, 1967, defendant Karl Kershner, accompanied by seventy-year-old Harold L. Bailey, was driving his automobile east on Highway 72 and turning left into Stephendale Court in Rolla, Missouri, when it was struck from the rear by an eastbound milk truck owned by defendant LeClaire Brothers Transfer, Inc. Fearful lest the application of brakes would propel him and his passenger into the windshield, Kershner disdained all efforts to stop, and guided his vehicle on a counter-clockwise orbit until it came to a halt south and west of its starting point. In the course of this circuitous journey, Mr. Bailey fell from the car and was discovered, conscious but contused, upon a lawn northeast of the collision site. Mr. Bailey expired eleven days after the accident (August 31, 1967), and his widow instituted this wrongful death action to secure $25,000 in damages from the defendants. The jury allotted her $10,000. Piqued by their plight, defendants appealed and, as a matter of chief insistence, urge that plaintiff did not make a submissible case because there was no substantial evidence Mr.

Bailey's death resulted from the injuries he sustained in the accident, and that the trial court erred in not sustaining their motions for a directed verdict.

■ Citing Myers v. Karchmer, Mo., 313 S.W.2d 697, 701–702(4), and Rule 79.03,[1] plaintiff suggests the refusal of the court nisi to direct a verdict is not properly here for review because defendants only referred generally to this alleged error in their motions for a new trial and one of the defendants in his brief, under "Points Relied On," alludes to the proposition by a conclusion contrary to the requirements of Rules 83.05(a) (3) and (e).

■ A defendant offering a directed verdict motion authorized by Rule 72.01 and § 510.280 is required by Rule 79.01 and § 510.210 to acquaint the trial court with "his grounds therefor" either orally or in writing.[2] Defendant LeClaire's motion for a directed verdict was for the stated "reason that there is no evidence showing that Plaintiff's husband's death was the direct and proximate result of any negligence of said defendant," and, at the request of defendant LeClaire, the court instructed the jury to find for the defendant "if you do not believe that Plaintiff's husband died as a direct result of the negligence of said defendant." Of course, the burden was on plaintiff to prove, without resort to speculation, that the cause of death was the charged negligence of the defendants, "and the test on causal connection is whether the facts show that absent the charged negligence the injury would not have been sustained." James v. Sunshine Biscuits, Inc., Mo., 402 S.W.2d 364, 375(2, 3). Defendant LeClaire's motion for a directed verdict and the proffered instruction given advised the trial court of the particular reason the motion was being made and satisfied the re-

1.  All references to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R., and RSMo 1959, V.A.M.S.

2.  Oganaso v. Mellow, 356 Mo. 228, 231, 201 S.W.2d 365, 366–367(3) ; Sargent v.

Wekenman, Mo.App., 374 S.W.2d 635, 637(1) ; Schubert v. St. Louis Public Service Co., Mo.App., 206 S.W.2d 708, 710–711(1, 2), aff'd 358 Mo. 303, 214 S.W.2d 420.

quirements of Rule 79.01 and § 510.210. The issue of submissibility here involved is not peculiar to a single defendant, but is a common factor in the case which cannot be bifurcated and applied to one without the other also being affected. In such circumstances, the efforts of one defendant may atone for deficiencies displayed by the other. Although Rule 79.03 provides that "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for a new trial," it additionally recites that "Where definite objections or requests were made during the trial in accordance with Rule 79.01 * * * a general statement in the motion of any allegations of error based thereon is sufficient." Having found that the trial court was sufficiently advised of the reason for the directed verdict motions and that the requirements of Rule 79.01 were satisfied, it follows that a general statement in the motion for a new trial concerning the averred error of the trial court in refusing to direct a verdict fulfilled the conditions of Rule 79.03. Notwithstanding the statement of points in defendant Kershner's brief is subject to plaintiff's criticism, the brief of defendant LeClaire fully states "why it is contended" and "wherein and why" the trial court's refusal to direct a verdict is "claimed to be erroneous," and the arguments made by both defendants, as evidenced by plaintiff's brief, were sufficiently adequate to enable plaintiff to identify the issue and answer defendants' contentions. Cf. Mills v. Keasler, Mo., 395 S.W.2d 111, 112(1). There having been a substantial compliance with the rules and statutes, we deem the action of the trial court in denying defendants' motions for a directed verdict to be properly here for our consideration and review.

Defendants offered no testimony, so all the evidence was produced by plaintiff, which included the only medical witness, James D. Butts, M.D., who had attended and treated the decedent since August 1962. Mr. Bailey had been suffering with generalized arteriosclerosis for several years before the collision, and had experienced a cerebral vascular accident or stroke in about 1953 which caused a partial paralysis of his right side and throat. Dr. Butts defined "cerebral vascular accident" as "a broad category of any accidental damage to any of the blood vessels in the cerebrum" such as "a cerebral thrombosis, a ruptured blood vessel or a ruptured aneurism," and stated that "frequently with a break of a blood vessel, or thrombosis, or something, that [the blood] pressure will go up real high." The doctor testified that a person with arteriosclerosis who has once experienced a stroke is more prone or susceptible to another cerebral vascular accident than the normal, healthy person, and that a person with arteriosclerosis "does not need" as much injury or trauma to produce a stroke as would a person in good health. In 1963 or 1964 Mr. Bailey "had a spell with his heart" which plaintiff said "hospitalized him [for] a few months' time." Dr. Butts had treated him for "high blood pressure, arteriosclerotic hypertension [and] for myocardial insufficiency, primary disease of the cardiovascular system." It was at the time "of a previous hospitalization" that Dr. Butts had prescribed nitroglycerin pills for Mr. Bailey which plaintiff recounted he took "if he was emotionally upset or excited." There was also evidence Mr. Bailey had been operated "for a duodenal ulcer," and after the 1953 stroke he was involved in an accident while a pedestrian when "some hot-rod caught his heel as he stepped up on the curb."

Immediately following the August 20, 1967, accident, Mr. Bailey was taken to a Rolla hospital and examined by Dr. Butts. His blood pressure was 260 over 90, and he "had some contusions and abrasions of the low back and in the region of the right hip." X-rays showed "osteoporosis with no recent fracture" and the "[h]eart and lungs and neurological examination didn't appear to be changed too much from what [Dr. Butts had] previously known about him." The doctor could not recall any complaints of head pains, but said the patient "had a

bruise of the forehead and a black eye * * * that developed [in] two or three days." Concerning the elevated blood pressure and its cause, Dr. Butts said, "that's a little hard to be exact, but I *kinda felt* it was due to his being extremely upset from trauma * * * something caused the blood pressure to go extremely high, which we felt *could have* injured a blood vessel. * * * I thought at the time that he *possibly* had had another stroke then * * * that was my initial impression * * *. Then as he appeared to improve and his pressure settled down, I was kinda hopeful that that had not happened. But *I think* it's entirely *possible* that a blood vessel could have been damaged * * *." (Our emphasis.)[3]

■ Upon admission to the hospital as a patient, Mr. Bailey "was started on blood pressure medication. He was given nitro-glycerin, coronary dilators * * * medicine for pain, [and] placed on tranquilizers." By the afternoon of the accident date "[h]is blood pressure returned to normal—well, normal for him * * *. He seemed to improve considerably * * *. On the 21st [the day following the accident] he was allowed to sit up in a chair. Second day his blood pressure was normal [and] on the 23rd * * * we even stopped part of that medication. 24th: He was up in the chair a couple of times." Mr. Bailey continued to improve, his blood pressure remained normal, "he appeared to become more like his old self," he was resting well and eating well. Then on the 28th "he started getting worse after he appeared to progress. * * * That was the first indication, and that progressed onward" until he died on August 31, 1967. The death certificate prepared by Dr. Butts in part states as follows:

"PART I. DEATH WAS CAUSED BY:

| | | INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|
| IMMEDIATE CAUSE | (a) Cerebro-vascular accident | 5 days |
| Conditions, if any, which gave rise to above cause (a), stating the underlying cause last. | DUE TO (b) Generalized arterio-sclerosis | |
| | DUE TO (c) | |

"PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH but not related to the terminal disease condition given in Part I (a) Multiple bruises and abrasions . . . 20b. DESCRIBE HOW INJURY OCCURRED . . . Auto accident 8/20/67." [4]

Omitting many of the objections and much of the colloquy among the court, counsel and the witness, the examination of Dr. Butts concerning causal connection be-

3. Portions of these quotations were stricken upon defendants' objections, but are recorded here to reflect the general tenor of Dr. Butts' testimony and lend insight to his additional testimony to be recounted anon.

4. § 193.170 is to the effect that a death certificate is prima facie evidence of the facts stated therein. However, the statement that the bruises and abrasions caused by the auto accident were "other significant conditions contributing to death but not related to the terminal disease condition given in Part I(a)" is inconsistent and insufficient, in and of itself, to show that the collision injuries were the cause of death. Therefore, the death certificate alone would not make a submissible case. State Farm Mutual Automobile Ins. Co. v. Underwood, Mo. (banc), 377 S.W.2d 459, 463(2).

tween the casualty and death proceeded thusly:

### Direct Examination

"Q Do you have an opinion, based on reasonable medical certainty, as to whether or not the injuries he received on August 20, 1967, directly contributed to cause the cerebral vascular accident that resulted in the death of Harold L. Bailey on August 31, 1967? THE WITNESS: Well, something caused his blood pressure to go up awful high. * *

"Q Is that 'yes' or 'no' as to whether or not you have * * * an opinion as to the causal relation? A Yes. I'll say 'yes.'

'Q What is that opinion? A As I said, something caused the blood pressure to go tremendously high, which we felt could have injured a blood vessel. * *

"Q Was there a relationship, in your professional opinion, and based on reasonable medical certainty, was there a causal connection between the injuries he had received and his high blood pressure? A It's a medical—anything on that would be strictly my thoughts in the matter at the time.

"Q May we have your thoughts, Doctor?

"MR. NORTHERN: We object to it unless it's based upon reasonable medical certainty as he's been taught and his experience has taught him.

"THE WITNESS: I don't have any— I can't answer that under those circumstances.

"Q (by Mr. Moomaw) Well, Doctor, I believe you've stated previously in your testimony that you do have an opinion. Now, is it your opinion that the injuries he received directly contributed to cause the cerebral vascular accident that resulted in his death? A Yes, it's my opinion. * * *

### Cross Examination

"Q * * * you said that you had an opinion, and you've expressed the opinion, but if I understood your testimony correctly, you said that it was not based upon any medical certainty? A That's right.

"Q Yes. It's just your feeling in the matter? A That's right. Yes. * * *

"Q * * * And a number of years ago Mr. Bailey had a stroke, did he not? A That's right, he did. * * *

"Q All right. Did he have a history of having an automobile accident at the time that he had this stroke? A Not to my knowledge. * * *.

"Q Isn't it true, Doctor, that many people have cerebral vascular accidents during their sleep? A That's right.

"Q Without any history of any excitement or anything at all? A That's right.

"Q And this is the reason that you say that it's—your opinion is not based upon any medical certainty? A That's right. My opinion is just based on what I asked; what I thought at the time I examined him."

■ Situations exist where causal connection between the accident and death reasonably may be inferred without the opinion of a medical expert. Fellows v. Farmer, Mo.App., 379 S.W.2d 842, 851(18). However, when the situation involves a person with long-standing general arteriosclerosis, hypertension and myocardial insufficiency who once had a cerebral vascular accident, and he succumbs to such a cause eleven days following a casualty which apparently inflicted only relatively minor injuries, it would be improper to permit the jury to infer that death ensued from those injuries without the aid of expert medical testimony.[5] It is true that plaintiff could recover for the wrongful death of her hus-

---

Cf. James v. Sunshine Biscuits, Inc., supra, 402 S.W.2d at 372–373(1); Harrison v. Weller, Mo.App., 423 S.W.2d 226, 230–231(10, 11); Bertram v. Wunning, Mo.App., 385 S.W.2d 803, 806–807(3);

Simmons v. Lollar, 10th Cir., 304 F.2d 774, 778(5); Lundrigan v. City of Los Angeles, 82 Cal.App.2d 238, 186 P.2d 12, 22(7).

band if he received injuries in the accident which of themselves would not normally result in the death of a healthy person but which aggravated existing diseases and thereby caused death. Dorsey v. Muilenburg, Mo., 345 S.W.2d 134, 137(1). Nevertheless, the unaided testimony of a lone expert witness that such injuries could, might, would or possibly could produce death, while admissible as an assurance that such a result was scientifically possible, is not, standing alone, substantial evidence that the injuries did cause death nor sufficient to make a submissible case.[6]

■ Dr. Butts' testimony savors of such expressions as "I kinda felt" the elevated blood pressure was due to upset caused by trauma which "we felt could have injured a blood vessel," "I think it's entirely possible a blood vessel could have been damaged," and "I thought * * * he possibly had another stroke then." He candidly volunteered he could not equate his opinion as to causal connection to one based upon reasonable medical certainty, and frankly admitted the opinion he had expressed on the subject was simply his "feeling in the matter [and] was not based upon any medical certainty." If Dr. Butts, plaintiff's only medical expert and the physician who had treated Mr. Bailey for five years and attended him after the collision, could not say with reasonable medical certainty that the casualty injuries caused or contributed to cause death, then a jury composed of laymen would not be justified in making such a finding. On the record presented, "the jury might or could solve the problem solely by guessing." Bertram v. Wunning,

supra, 385 S.W.2d at 807(4). Assimilating Dr. Butts' testimony in its entirety does not present a situation where such declarations as "I felt," "I feel" or "It is my feeling" are used synonymously with the word "believe" or a like expression connoting a considered professional mental process.[7] As used in the context employed by the doctor, "Webster's New Collegiate Dictionary defines 'feeling' as an 'unreasoned opinion.' It would appear that 'feeling' falls somewhere below 'conjecture' and 'guess' when measured by a rational standard, since the same authority says that the latter two words may imply the use of some reasoning power, albeit defectively: 'Conjecture implies formation of an opinion or judgment upon insufficient evidence; * * * guess stresses a hitting upon a conclusion either at random or from very uncertain evidence.' If [causal connection] may not be [established] by guess or conjecture, a fortiori [it] may not be arrived at by a mere 'feeling.'" Zirin Laboratories International, Inc. v. Mead-Johnson & Co., D.C.Mich., 208 F.Supp. 633, 636

■ Plaintiff's counsel stated here in oral argument that if it was found plaintiff "did not show a proper causal relationship between the injuries received in the accident and the death, this court need go no further." As indicated, we have so found and need not, therefore, belabor the other issues preserved and presented for appeal. The task remaining is to determine what disposition to make of this action, and thankfully we are not required to divine, as was our lot in Grissom v. Handley, Mo. App., 410 S.W.2d 681, 690–691(14–20),

---

6. Ficken v. Hopkins, Mo., 389 S.W.2d 193, 202(16); Kinealy v. Southwestern Bell Telephone Company, Mo., 368 S.W.2d 400, 404(4); Ketcham v. Thomas, Mo., 283 S.W.2d 642, 650; Baker v. Kansas City Terminal Ry. Co., Mo., 250 S.W.2d 999, 1006–1007(5); Hunt v. Armour & Co., 345 Mo. 677, 684, 136 S.W.2d 312, 315–316(8); Berry v. Kansas City Public Service Co., 341 Mo. 658, 676, 108 S.W.2d 98, 107; Scanlon v. Kansas City, 336 Mo. (banc) 1058, 1064, 81 S.W.2d 939, 940(1); Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 605, 66 S.W.2d

561, 565(9–11); Jackson v. Cherokee Drug Company, Mo.App., 434 S.W.2d 257, 263–264(9); Welker v. MFA Central Co-Operative, Mo.App., 380 S.W.2d 481, 486 (2, 3); Leavitt v. St. Louis Public Service Company, Mo.App., 340 S.W.2d 131, 141(14).

7. E. g., Stephens v. Guffey, Mo., 409 S.W. 2d 62, 68; Unruh v. Industrial Commission, 8 Wis.2d 394, 99 N.W.2d 182, 185–186(9); Euker v. Welsbach Street Lighting Co. of America, 149 Pa.Super. 78, 25 A.2d 758, 760(1).

whether to reverse the cause outright or remand it for a new trial because plaintiff misconceived, overlooked or abandoned a theory of liability, for the problem in this case relates to the failure to prove a causal connection between the injuries inflicted by defendants' alleged negligence and the death of plaintiff's spouse. It is noted that approximately one-fourth of the appeal transcript devoted to the examination of all witnesses concerns the testimony of Dr. Butts, and that plaintiff's counsel, because of the nature of the physician's answers above recounted, were permitted a recess in the course of direct examination during which they hopefully could devise questions which would better serve to elicit the doctor's testimony and opinions in a manner more favorable to plaintiff's case. In addition to the testimony of Dr. Butts, the hospital records and death certificate were admitted into evidence. Although the record indicates other physicians (in roles of consulting radiologist and otherwise) observed Mr. Bailey while he was hospitalized, there is no indication that any of these doctors were sufficiently acquainted with the case to qualify them as experts in the matter, or that their opinions if any, or the bases for such opinions, would differ from Dr. Butts' expressions. We can only assume that if other or more favorable evidence and medical expert testimony was available, plaintiff's perspicacious counsel would have produced it at trial. No theory is suggested or apparent on which plaintiff may prove causal connection through witnesses and evidence available, and it would be most presumptuous on our part to presuppose that Dr. Butts would state with certainty upon retrial that which he would not and could not do at the first hearing. In such circumstances, it becomes our duty to dispose of the case finally. Rule 83.13 (c); § 512.160(3); Graham v. Connor, Mo.App., 412 S.W.2d 193, 205(26), and cases there cited.

The judgment for plaintiff is reversed.

HOGAN, P. J., and STONE, J., concur.